TOMASETTI CONSTRUCTION Co., INC., Appellant, *v.* LONG ISLAND RAIL ROAD COMPANY, Respondent.

Argued April 4, 1945; decided July 19, 1945.

502

*William Weisman* and *Norman Laidhold* for appellant.
I. The contract of July 3, 1940, was the contract of the railroad

company. The parties to the contract were expressly named. *(Johnson* v. *State of New York,* 172 Misc. 776.) II. The provisions of the contract relate only to the named parties. III. Defendant expressly agreed to pay plaintiff. *(Taylor* v. *United States Casualty Co.,* 269 N. Y. 360; *Remo Engineering Corp.* v. *City of New York,* 260 App. Div. 587, 286 N. Y. 651; *Matter of Kolb* v. *Holling,* 285 N. Y. 104.) IV. The Supreme Court has exclusive jurisdiction of the subject matter and the parties. The grade crossing elimination statutes do not extend the jurisdiction of the Court of Claims to plaintiff. *(Columbia Machine Works* v. *Long Island R. R. Co.,* 267 App. Div. 562; *Moller* v. *New York Central R. R. Co.,* 282 N. Y. 188.) V. The Court of Claims has no jurisdiction here. *(Goldstein* v. *State of New York,* 168 Misc. 337; *Throckmorton* v. *State of New York,* 128 Misc. 599; *Syracuse Grade Crossing Commission* v. *D., L. & W. R. R. Co.,* 263 App. Div. 930; *Matter of Delaware, L. & W. R. R. Co.* v. *Fengler,* 175 Misc. 1037, 262 App. Div. 685, 288 N. Y. 141; *Haslam* v. *State of New York,* 167 Misc. 455; *Pantess* v. *Saratoga Springs Authority,* 255 App. Div. 426.)

*Frederick Evan Crane, William McNamara* and *Louis J. Carruthers* for respondent. I. The Supreme Court does not have jurisdiction of either the subject matter of this action or the person of the defendant as the subject matter is a contractual obligation of the State, payable out of the State treasury, and the defendant an instrumentality or agent of the State. (State Const., art. VII, § 14; L. 1939, ch. 289; *Saranac L. & T. Co.* v. *Roberts,* 195 N. Y. 303; *Buckles* v. *State of New York,* 221 N. Y. 418; *Galbes* v. *Girard,* 46 F. 500; *Moller* v. *New York Central R. R. Co.,* 282 N. Y. 188; *Breen* v. *Mortgage Commission,* 285 N. Y. 425; *Beldon* v. *Mortgage Comm. of State of New York,* 173 Misc. 731.) II. It is well established that an agent who makes a contract for a disclosed or known principal incurs no personal liability whether he signs the contract individually or as an agent. *(Ell Dee Clothing Company* v. *Marsh,* 247 N. Y. 392; *Clarkson* v. *Krieger,* 254 N. Y. 114; *Voss* v. *John Lowry, Inc.,* 225 App. Div. 507, 252 N. Y. 587.)

*Nathaniel L. Goldstein, Attorney-General (Gerald J. Carey* and *Orrin G. Judd* of counsel), for State of New York, *amicus curiæ* in support of respondent's position. The Supreme Court

does not have jurisdiction of the subject matter of this action. (*Transit Comm.* v. *L. I. R. R. Co.,* 253 N. Y. 345; *Breen* v. *Mortgage Commission,* 285 N. Y. 425; *Moller* v. *New York Central R. R. Co.,* 282 N. Y. 188; *Metropolitan Trust Co.* v. *Tax Comrs.,* 220 N. Y. 344; *Adler, Inc.,* v. *Noyes,* 285 N. Y. 34; *Ell Dee Clothing Co.* v. *Marsh,* 247 N. Y. 392; *Clarkson* v. *Krieger,* 254 N. Y. 114; *Voss* v. *Lowry, Inc.,* 225 App. Div. 507, 252 N. Y. 587.)

*Philip Halpern* and *Frank C. Bowers* for Public Service Commission of the State of New York, *amicus curiæ* in support of respondent's position. The complaint was properly dismissed for lack of jurisdiction. (L. 1928, ch. 677, § 2, subd. 9; *Moller* v. *New York Central R. R. Co.,* 282 N. Y. 188; *Adler, Inc.,* v. *Noyes,* 285 N. Y. 34; *Breen* v. *Mortgage Commission,* 285 N. Y. 425.)

LEHMAN, Ch. J. In an action brought by the plaintiff in the Supreme Court of New York, the complaint alleges that " on July 3, 1940, plaintiff and defendant entered into a written agreement which is identified as contract No. 3, by the terms of which, among other things, the plaintiff agreed to perform certain work, labor and services, and to furnish certain materials in connection with a grade crossing elimination project in the Boroughs of Brooklyn and Queens, City and State of New York "; that the plaintiff has completed all the work and furnished all the materials required of it pursuant to the contract and has duly performed all the terms and conditions of the contract on its part to be performed; that during the progress of the work, defendant paid to the plaintiff on account of the said contract the sum of $2,585,548.72 and that " by the computations made by the defendant, there has been found to be due from the defendant to the plaintiff, the sum of $113,-748.23 ". In a second cause of action the plaintiff alleges that after the plaintiff had entered upon the performance of the work required by the contract, it performed " at the special instance and request of defendant " extra work and furnished extra services to the defendant, exclusive of work, labor and materials set forth in the first cause of action, " at the agreed price and reasonable value of $119,799.25."

The defendant moved in the Supreme Court to dismiss the complaint " on the ground that [the] Court has not jurisdiction

of the subject matter of this action or of the defendant ''. The motion was denied at Special Term, the court holding that " questions of fact are raised by the pleadings and affidavits." Upon appeal by the defendant to the Appellate Division, the order denying the motion was reversed and the motion to dismiss granted. The plaintiff appeals from the judgment dismissing the complaint entered upon the order of the Appellate Division

The contract, though referred to in the complaint and " identified as contract No. 3 '', is perhaps not incorporated in the complaint in accordance with technical rules of pleading but upon the motion to dismiss it was marked as an exhibit and concededly the defendant's challenge of the jurisdiction of the court is based upon the premise that the subject matter of the action which the plaintiff has brought is the obligation the defendant, assumed under the contract marked as an exhibit or which is imposed upon the defendant by law, to pay the plaintiff for work, labor and materials required by the contract and for extra work, labor and materials furnished by the plaintiff at the request of the defendant in connection with the plaintiff's performance of the work required by the contract. The sufficiency of the complaint is not directly challenged, and in determining the question whether the Supreme Court has jurisdiction of the subject matter of the action, the contract referred to in the complaint as " contract No. 3 " and marked as an exhibit upon the motion to dismiss the complaint serves to identify the " subject matter " of the action; and for that purpose, at least, must be read into the complaint.

The State of New York is not named as a party to the contract for construction work in connection with the grade crossing elimination, but the Constitution of the State imposes upon the State an obligation to pay the cost of such work where the work is authorized, and the contracts for the work executed, in accordance with the law of the State. Even though the State does not in terms assume any obligation under the contract and is not named as party defendant in the summons and complaint, if the plaintiff is seeking to enforce the obligation of the State to pay the cost of the work and the action is brought against the defendant railroad company upon a contractual obligation which it assumed, if it did assume it, only as an agency of the State, it is clear that the Supreme Court has no jurisdiction

of the subject matter of the action. (Cf. *Maltby* v. *County of Westchester*, 267 N. Y. 375; *Moller* v. *New York Central R. R. Co.*, 282 N. Y. 188; *Breen* v. *Mortgage Commission*, 285 N. Y. 425.) On the other hand, if the plaintiff is seeking to hold the defendant liable for its personal dereliction or for its default in the performance of an obligation which it assumed in its corporate capacity and not as an agency of the State, or which is imposed upon it by law, the Legislature has not attempted to deprive the Supreme Court of jurisdiction of the subject matter of the action, and, under the Constitution, could not do so. (Cf. *Seglin Construction Co., Inc.*, v. *State of New York*, 249 App. Div. 476, affd. 275 N. Y. 527; *Remo Engineering Corp.* v. *City of New York*, 260 App. Div. 587, affd. 286 N. Y. 657; *Columbia Machine Works* v. *Long Island R. R. Co.*, 267 App. Div. 582.)

The Constitution of the State, as amended and in force since January 1, 1939, provides: " The legislature may authorize by law the creation of a debt or debts of the state, not exceeding in the aggregate three hundred million dollars, to provide moneys for the elimination, under state supervision, of railroad crossings at grade within the state, and for incidental improvements connected therewith as authorized by this section * * *. The expense of any grade crossing elimination the construction work for which was not commenced before January first, nineteen hundred thirty-nine, including incidental improvements connected therewith as authorized by this section, whether or not an order for such elimination shall theretofore have been made, shall be paid by the state in the first instance, but the state shall be entitled to recover from the railroad company or companies, by way of reimbursement (1) the entire amount of the railroad improvements not an essential part of elimination, and (2) the amount of the net benefit to the company or companies from the elimination exclusive of such railroad improvements, the amount of such net benefit to be adjudicated after the completion of the work in the manner to be prescribed by law, and in no event to exceed fifteen per centum of the expense of the elimination, exclusive of all incidental improvements. The reimbursement by the railroad companies shall be payable at such times, in such manner and with interest at such rate as the legislature may prescribe. * * * A grade

crossing elimination the construction work for which shall be commenced after January first, nineteen hundred thirty-nine, shall include incidental improvements rendered necessary or desirable because of such elimination, and reasonably included in the engineering plans therefor." (Art. VII, § 14.)

The liability imposed by this section upon the State, to pay, in the first instance, the entire expense of the construction work of any grade crossing elimination is made subject solely to the condition that the work shall be performed " under state supervision ". It is imposed even in those cases where the railroad company must thereafter reimburse the State for part of the expense. The Legislature was free to provide by statute that contracts for such work might be made by the railroad company interested in the elimination of the grade crossing and, in such case, except as the statute might otherwise provide, the railroad company and the contractor could by agreement also assume personal and corporate obligations towards each other supplementary to the obligation of the State to pay the entire cost of the work. Upon this appeal only the narrow question is presented whether this action is brought to enforce such a corporate obligation.

To carry out the purpose of article VII, section 14, of the Constitution, the Legislature at its first session after that section was adopted enacted chapter 289 of the Laws of 1939 entitled " An Act supplemental to several acts providing for the elimination of highway-railroad crossings at grade, applicable only to eliminations the construction work whereof shall be commenced after January first, nineteen hundred thirty-nine." It provides among other things: " This is an enabling act to carry out section fourteen of article seven of the constitution as approved by the people November eighth, nineteen hundred thirty-eight " (§ 1). The elimination of highway-railroad crossings at grade, upon which construction work is commenced after January first, nineteen hundred thirty-nine, " shall include incidental improvements rendered necessary or desirable because of such elimination, and reasonably included in the engineering plans therefor * * *." (§ 2.) " The expense " of every such grade crossing elimination " including incidental improvements connected therewith, as determined

by the commission to be necessary or desirable because of the elimination and reasonably included in the plans for such elimination and railroad improvements not an essential part of the elimination but desired by the railroad company or companies, shall be paid in the first instance out of the state treasury to the persons and corporations entitled thereto from time to time on accountings and vouchers approved by the department or commission having jurisdiction  *  *  *  upon audit and warrant of the comptroller  *  *  *." (§ 4.) "Whenever a railroad company shall be directed to perform construction work in the cities of New York, Buffalo or Syracuse, the transit commission, the Buffalo commission, or the Syracuse commission, within their respective jurisdictions, shall supervise such work and expenditures therefor and the commission having jurisdiction shall review and approve all plans, forms of contracts, specifications and lists of bidders and certify completion or partial completion thereof." (§ 9.)

Contracts for grade crossing elimination are, of course, governed by the provisions of that statute and of other statutes and laws of the State of New York and of the United States, and the contract in this case expressly so provides. The contract and specifications also expressly provide that "this project is being performed by The Long Island Railroad Company in conjunction with the Transit Commission, State of New York". Though the parties named in the contract are the defendant railroad company, which is performing the "project" in conjunction with the Transit Commission, and the plaintiff, who agrees to perform work and furnish materials in connection with the project, yet the law imposes upon the State the obligation to pay the expense of the "project" and that obligation of the State may be enforced in the Court of Claims by appropriate action brought by the appropriate party. The railroad company and the contractor were not entirely free to plan the project as they saw fit or to fix the terms for its performance. The contract was made pursuant to the order and determination of the Transit Commission and the work must be performed under the supervision of the Commission and pursuant to plans approved by the Commission in order to promote the safety and convenience not only of the railroad but also of the State highway.

The contract thus has a dual aspect. The railroad company assumed corporate obligations for the benefit of the contractor, and such obligations may be enforced against it by the contractor by suit in the Supreme Court; and it has exacted from the contractor, in manner approved by the Commission, obligations which it may enforce for its own benefit or for the benefit of the State. On the other hand the obligation of the State to pay the expense of the work which the contractor agreed to do arises not from any agreement of the railroad company that the State shall pay such expense, but is imposed by law wherever a railroad company by direction of the Commission enters into a contract for grade crossing elimination work upon terms approved by the Commission; and the railroad company acts solely as a State agency in entering into an agreement which defines the obligation of the State and which regulates the conditions under which that obligation shall be carried out *by the State.* No action upon contract may be maintained against it for any default by the State in carrying out an obligation defined by the contract.

The complaint in this action is for the failure by the defendant railroad company to pay for work performed by the contractor. No other default by the defendant is alleged in either cause of action pleaded in the complaint, and it is perhaps significant that the complaint contains no express allegation that the defendant agreed to pay either for work required by the contract or for the " extra work " performed or the materials furnished by the plaintiff. To establish liability the plaintiff relies upon its legal conclusions that under the contract the defendant is liable for the agreed price of the work and materials required by the contract, and that " by the computations made by the defendant there has been found to be due from the defendant to the plaintiff, the sum of $113,748.23 "; and in its second cause of action the plaintiff relies upon an implied promise that the defendant will pay for " extra " work performed and materials furnished by plaintiff " at the special instance and request of defendant ". As we have pointed out, if the contract contains a promise to pay for the work in its corporate capacity and not as an agent for the State, the Supreme Court has jurisdiction of an action to enforce that promise. It has no jurisdiction to enforce a promise to pay made by the defendant as agent of

the State. So, too, the Supreme Court would have jurisdiction to enforce an implied promise of the defendant to pay for services rendered and materials furnished " at [its] special instance and request " if the request was made by the defendant in its corporate capacity and the services were rendered and the materials furnished to the defendant in the same capacity. It has no jurisdiction to enforce an implied promise to pay for services rendered or materials furnished to the defendant as agent of the State and at the special instance and request of the defendant acting as such agent. The question then which we must decide upon this appeal is, we repeat, whether the subject matter of this action is an alleged liability arising from a promise, express or implied, by the defendant in its corporate capacity and not as agent of the State.

The contract provides among other things: " XXIV. For the true, faithful and complete performance of the work and obligations of this contract, the Company herein covenants and agrees to pay the Contractor as full compensation for all labor, material, tools, royalties and work required to complete the contract in accordance with the terms and conditions set forth, both general and special, the following ' Unit ' or ' Lump Sum ' prices: "

The succeeding paragraphs of the contract contain the terms and conditions which define the defendant's obligation to pay and the plaintiff's right to demand payment. The plaintiff is required to submit bills for work performed and materials furnished by the plaintiff as provided in the contract or pursuant to orders for extra work issued in accordance to the contract. The " statement of the Contractor, when approved by the Engineer, shall be included in the monthly statement of ' Accounts Payable ' of the Engineer, prepared in accordance with Section XXVI " and " the amount thereof shall in turn be included in a voucher, which the Engineer shall prepare and submit to the Transit Commission for approval and *transmission to the Comptroller of the State of New York for payment out of the State treasury in accordance with the provisions of Section 4* of the Grade Crossing Elimination Act of 1939 ". (§ XXV, par. h.) " *Payments shall be made by the Company during the progress of the work embraced in this contract,* in accordance with a ' Statement ' of ' Accounts Pay-

able ' prepared by the Engineer and based on the Contractor's monthly statement, described in Section XXV, when approved as correct by the Engineer, and in accordance with the rules herein prescribed; *it being understood, however, that the Company shall be under no obligation to make such payments until three (3) days shall have elapsed after receipt by it from the Comptroller of the State of New York of the monies covered by the voucher referred to in paragraph (h) of said Section.*" (§ XXVI, par. b.) The obligation of the Company to make payment of the balance found due on final settlement as provided in Section XXVI paragraph d is in the same manner qualified by the words "that the *Company shall be under no obligation to make such payment until three (3) days have elapsed after receipt by it from the Comptroller of the State of New York of the monies covered by the final voucher referred to in the preceding paragraph hereof.*"

These provisions of the contract, and others which might be quoted, create an obligation of the railroad company to do the things therein specified *in order to obtain from the treasury of the State as provided in the Constitution and the statutes of the State, the monies which would be required for payment to the contractor in accordance with the terms of the contract, and to pay such monies to the plaintiff* " *during the progress of the work* " *and upon the final settlement three days after receipt by the Comptroller.* There is no claim in this action that this obligation has been breached. The subject matter of this action is the asserted legal obligation of the railroad company to pay for services rendered or materials furnished in connection with a grade crossing elimination project though no moneys have been received by the railroad company from the State for that purpose. The railroad company in its corporate capacity has not undertaken to obtain such monies from the State or to make any payment to the contractor either for work specified in the contract or for extra work except from monies received from the State, which the State is under the Constitution and statutes bound to pay. There lies the distinction between this case and the case of *Remo Engineering Corp.* v. *City of New York* (260 App. Div. 587, 286 N. Y. 657, *supra.*)

Since the subject matter of the action is the asserted liability of the defendant for work, labor and materials furnished pur-

suant to a contract for construction in connection with a grade crossing elimination project and for extra work, and since both under the law of the State and under the provisions of the contract the expense of such construction must be paid in the first instance by the State and the defendant has not assumed any obligation in its corporate capacity to make any payments to the plaintiff until it has received the moneys required for such payment, and the complaint contains no allegations that the defendant has in its corporate capacity promised to pay the plaintiff regardless of whether the State furnished the monies required, it seems to a majority of the court that the Supreme Court has no jurisdiction of the subject matter of the action. We emphasize that this is the only question presented upon this appeal and decided now.

The judgment should be affirmed, with costs.

DYE, J. (dissenting). I dissent. The Grade Crossing Eliminations Act (L. 1928, ch. 677, as amd. by L. 1939, ch. 289) and the State Constitution (art. VII, § 14) do not limit or restrict the original jurisdiction of the Supreme Court (art. VI, § 1). In the absence of express language, they do not constitute an authority for the proposition that a railroad in the performance of elimination work is an agency of the State so as to deprive the Supreme Court of original jurisdiction to hear and determine disputes between private parties, arising out of the performance of the elimination work, and confer jurisdiction thereof on the Court of Claims.

While the Court of Claims Act (§ 8) contemplates a general waiver of immunity by the State, it is not tantamount to saying that every time a private railroad corporation performs elimination work, which must conform to plans and specifications approved by the State before it can receive reimbursement out of State monies, it thereby becomes a State agency. To hold that it does is to deprive the plaintiff of its right to proceed against its privy and is contrary to the interpretation heretofore given to the immunity statutes; for instance, in *Pantess* v. *Saratoga Springs Authority* (255 App. Div. 426) involving an independent agency, it was held that the suit was properly brought in the Supreme Court; this was also the ruling in *Remo Engineering Corp.* v. *City of New York* (260 App. Div. 587, affd. 286 N. Y. 657); while in *Breen* v. *Mortgage Commis-*

*sion* (285 N. Y. 425) involving an administrative body designated a State agency by statute, the Court of Claims was held to have jurisdiction. Nor does *Seglin Construction Co., Inc.,* v. *State of New York* (249 App. Div. 476, affd. 275 N. Y. 527) in which subcontractors' claims were considered in the Court of Claims in connection with the whole claim, change the rule, as such jurisdiction was specifically conferred by the Enabling Act, Laws of 1931, chapter 692, which was held to be an enlargement of the Court of Claims' jurisdiction and was in no respect treated as a diminution of the jurisdiction of the Supreme Court.

Here the railroad has defaulted in payment and is attempting to excuse its breach by referring to the provisions in the contract that " the company shall be under no obligation to make payments until three days shall have elapsed after the receipt by it * * * of the monies " and that under the statute the expense of grade crossing eliminations " shall be paid by the State in the first instance ". While withholding of preliminary payment by the State may be available to the railroad as a defense or as a postponement of action until payments are received, default by the railroad in performing the routine administrative acts preliminary to reimbursement payment by the State should not be blessed by giving it the dignity of an exculpatory act and thereby permitting the railroad to cancel out its covenant to pay the contractor for its work and by such default transform itself into a State agency so as to deprive the Supreme Court of jurisdiction of a dispute between it and its privy. The amended Grade Crossing Elimination Act never contemplated such a result.

While this court has not previously passed on the narrow point presented in the case at bar, it has only recently indicated the method of payment in connection with a dispute involving the phrases, " shall be paid by the State in the first instance " (N. Y. Const., 1939, art VII, § 14) and " shall be paid in the first instance out of the State treasury * * * " (L. 1939, ch. 289, § 4), when it directed the City of Buffalo to provide funds to pay the salary of an engineering department employee in the Buffalo Transit Commission. In directing it to provide the funds for the payment of the salary the court pointed out that the question debated in the Constitutional Convention in 1938 was " whether the railroads should pay something or the

State should pay all ", and that no change in the method of administration was considered, and that, in amending the Laws of 1928, chapter 677, by enactment of Laws of 1939, chapter 289, the Legislature intended: " a continuance of the method of payment for elimination construction work done after January 1, 1939, in the same manner as for work done prior thereto ". (*Matter of Kolb* v. *Holling,* 285 N. Y. 104, 110.)

There is nothing in the contract at bar whereby the State undertook to pay the contractor. Its obligation was to reimburse the railroad for the whole cost upon its performance of the elimination work in accordance with the plans and specifications. Mere approval of the contract, plans and specifications as to form by the Attorney-General, and as to availability of funds for reimbursement by the Comptroller, does not make the State liable as a party. At most such acts are only the exercise of an administrative routine designed to constitute a warranty of validity, that the proposed work is within the scope of the statute and that money paid in reimbursement thereof will be lawfully expended.

The holding about to be made by a majority of this court will deny to this contractor the use of a tribunal in which to plead its cause for there is no specific authority permitting this private corporation to sue in the Court of Claims since we can not say the State is a party to the contract. It is dismissing the instant complaint on the jurisdictional ground that the railroad is an agent of the State, completely disregarding the allegations in the complaint that the action is for breach of a contract between private corporations. Such a dismissal should be based only on a holding that as a matter of law the complaint itself is directed against the railroad company, not in its corporate capacity, but in its official status as an agent of the State (see *Adler, Inc.,* v. *Noyes,* 285 N. Y. 34). There is nothing to that effect in the complaint. Everything in the contract indicates that the railroad had no such thought in mind when it executed the contract, and this is borne out by the provisions relating to the default of the contractor. It was the railroad which exacted the performance bond, and, in the event of default, it would be the railroad and not the State that would exact the penalty.

If it is desired, the Legislature in an appropriate case could appoint the Long Island Railroad, or any other railroad corporation for that matter, its agent in the elimination of railroad crossings, but we are convinced it would undertake such a course with great reluctance for reasons so obvious as to render recital unnecessary. Why, then, should we read into this situation something that is not there? Payment in the first instance is a financial relation. The framers of the Constitution and the members of the Legislature never intended to change the long-established administrative practice in referring to grade crossing elimination through the medium of an independent agency. It did intend to pay the full cost, but, before advancing the money, the State retained to itself the right to examine the plans, inspect the materials used for functional quality, supervise the pay and working conditions of the labor employed and inspect the work so that the finished job for which the taxpayers were footing the bill would conform to the requirements of the statute. This is a far cry from creating the railroad its agent by implication.

It is for these reasons that I feel the Supreme Court has jurisdiction to hear and determine the rights of the parties to this contract in the first instance, and to deprive the contractor of the use of this constitutional tribunal is, in effect, depriving him of his cause of action for there is no other in which he can be heard.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed.

DESMOND, J. (dissenting). I concur with Judge DYE for reversal on these grounds:

1. The contract between plaintiff and defendant contains an express promise by the latter to pay the former for the construction work. That contract contains no such promise by the State or any State office or body, nor is it signed as a party by any of the latter.

2. Despite that express engagement by defendant, the majority of this Court is dismissing plaintiff's complaint on a ground which makes it impossible for plaintiff to sue defendant in any court on a breach of that promise to pay, since access to the Supreme Court is forbidden, and defendant cannot be sued in the Court of Claims.

3. A dismissal of this suit on jurisdictional grounds can be based only on a holding that as matter of law the complaint itself is directed against defendant, not in its own corporate capacity but in its " official status " as an agent of the State (See *Adler, Inc.; v. Noyes*, 285 N. Y. 34, 37). There is nothing to that effect in this complaint.

4. The language of the Constitution (art. VII, § 14) requiring the State to pay the whole cost of grade crossing eliminations " in the first instance ", which language is relied upon by the majority here as imposing direct and exclusive liability on the State to pay the charges of those doing the actual work, has been held by this Court in *Matter of Kolb* v. *Holling* (285 N. Y. 104, 110), to have no such meaning or effect.

5. The agreement between plaintiff and defendant that the latter need not pay the former until three days after the State has paid the latter, might be the basis of a *defense* to this suit — it cannot deprive the Supreme Court of jurisdiction to entertain the cause.

LOUGHRAN, LEWIS and THACHER, JJ., concur with LEHMAN, Ch. J.; CONWAY, DESMOND and DYE, JJ., dissent in opinions by DYE, J., and DESMOND, J.

Judgment affirmed.