TOMASETTI CONSTRUCTION Co., INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Motion No. 1186.)

Court of Claims, February 11, 1946.

*Douglass Newman* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Gerald J. Carey* of counsel), for defendant.

LAMBIASE, J. Tomasetti Construction Co., Inc., above named, makes this application for an order permitting it to file a claim against the State of New York, in the sum of $119,799.25 with interest. The papers before this court on this application consist of those served by each of the parties hereto upon the other, and also of such documents as are referred to in a written stipulation of counsel dated January 23, 1946, and filed with this court.

Claimant's proposed claim herein alleges among other things that: " Under date of July 3, 1940, claimant entered into a contract with the Long Island Railroad Company on behalf of and as agent for the State of New York, approved as to form by the Attorney General of the State of New York, and approved by the Deputy Comptroller for the State of New York, said contract being known as Contract No. 3 for Atlantic Avenue improvement, construction of permanent facilities — Sections Nos. 3 and 4 Montauk Avenue to 92nd Street, Boroughs of Brooklyn and Queens, State of New York, for the installation in Section No. 3 — Station 391 + 64.5 to Station 432 + 71 and Section No. 4 — Station 350 + 39.5 to Station 391 + 64.5 of two track subway structure, emergency exits, duct lines, manholes, sewers, syphons, sumps, drainage, water mains and all incidental work which are hereby referred to and made part hereof, as though set forth herein in full."

" During the performance of said contract, the State of New York, acting through its engineers and agents in charge thereof, ordered, directed, and compelled claimant to perform certain extra work, to wit: to excavate 43,433 cubic yards at the agreed and reasonable value of $2.25 per cubic yard, making the total agreed and reasonable value for such services the sum of $97,724.25, and to provide 441.5 linear feet additional track support at the agreed and reasonable value of $50 per linear foot, making a total of the agreed and reasonable value of $22,075, no part of which has been paid although duly demanded."

Claimant duly performed under the above contract and completed the work required thereby prior to December 30, 1941, the contract date for the completion of the work having been extended to that date. The construction was formally approved as completed substantially in accordance with the contract by an order of the Transit Commission dated January 20, 1942.

It appears from the papers before us that claimant, upon the completion of its contract, made claim against the Long Island Rail Road Company for the reasonable value of certain extra work, labor, and services rendered, and of certain extra materials furnished by it upon the alleged order and direction of the Long Island Rail Road Company, its agents, servants and employees. This claim for extras was denied by the Long Island Rail Road Company. It is conceded, however, that upon the completion of the work there was a balance under the contract of $112,488.23 due and owing to the claimant.

In December, 1942, claimant brought action in the Supreme Court, County of Kings, State of New York, against the Long Island Rail Road Company to recover both the amount concededly due under the contract, and that claimed by it as and for extras; the amount concededly due not having been paid to claimant because of the controversy over the claim for the extras and because of the inability of the claimant and Long Island Rail Road Company aforesaid to get together on some form of a general release without which final payment under the contract could not be made.

The attorney for the defendant moved for a dismissal of the complaint in said action aforesaid, said motion being returnable on February 5, 1943, on the ground that the Supreme Court had no jurisdiction of the subject matter of the action. That motion was denied, and the defendant appealed to the Appellate Division, Second Department, which reversed the lower court and granted defendant's motion to dismiss the complaint. (*Tomasetti Construction Co.* v. *Long Island R. R. Co.*, 267 App. Div. 874.) The Court of Appeals by decision dated July 19, 1945, sustained the Appellate Division in its dismissal of plaintiff's complaint. (*Tomasetti Construction Co.* v. *Long Island R. R. Co.*, 294 N. Y. 501.). On July 26, 1945, the judgment of the Court of Appeals was duly made the judgment of the lower court, and on August 17, 1945, judgment was duly entered thereon.

The Court of Appeals held that since the subject matter of the action was the asserted liability of the Long Island Rail Road Company for work, labor, and materials furnished pursuant to a contract for construction in connection with a

grade crossing elimination project and for extra work, and since both under the laws of the State and under the provisions of the contract the expense of such construction was to be paid in the first instance by the State, and since the defendant had not assumed any obligation in its corporate capacity to make any payments to the plaintiff until it had received the moneys required for such payment, and since the complaint contained no allegations that the Long Island Rail Road Company had in its corporate capacity promised to pay the plaintiff regardless of whether the State furnished the moneys required, the Supreme Court had no jurisdiction of the subject matter of the action. It held further that the Long Island Rail Road Company was acting as the agent of the State of New York under the contract aforesaid, and that the claim, if any, for work, labor and materials furnished pursuant to the contract and for extra work would have to be brought against the State of New York. The Attorney-General of the State of New York was apprised of all of the steps in this action in the Supreme Court brought by the claimant herein as plaintiff therein, and appeared therein throughout all its various steps as *amicus curiæ*.

On or about June 12, 1942, the Long Island Rail Road Company, by letter signed by its engineer-in-charge, forwarded to the claimant herein six copies of a supplemental agreement, and one copy of a summary sheet, the latter purporting to show final quantities and prices of the contract items and extra work items. This letter requested claimant to sign five copies of the supplemental agreement and outlined the procedure for signing the same, and requested that the five signed copies of the supplemental agreement be returned to the writer of the letter. It contained the further statement that the procedure being employed was " a necessary requirement of the State of New York, before your [claimant's] final estimate for this project can be certified to, and released."

The supplemental agreement submitted by the Long Island Rail Road Company in effect amounted to a general release, and since it was not provided therein for the payment to claimant of its alleged extras, claimant inserted therein before signing and returning the same, a clause 5 which read as follows: " The ' Owner ' (Long Island Railroad Co.) and the Contractor (claimant) agree that this agreement does not constitute a waiver on the part of the Contractor of its claim in the sum of $97,724.25, which has heretofore been made by the Contractor against the ' Owner ' for extra work relating to trench excavation and waterproofing ".

In the affidavits and the brief submitted on behalf of the claimant on this motion, it is denied that it ever received a final detailed estimate except the one dated January 3, 1945, of which more will be said later herein. However, in the stipulation of counsel dated January 23, 1946, above mentioned, it is stipulated by claimant's counsel that a copy of a summary sheet marked Exhibit " X " for the purposes of this application and the proposed release herein referred to which was amended by claimant, were received by the claimant with the afore-mentioned letter of June 12, 1942. This so-called summary sheet accompanying the letter of June 12, 1942, bears the legend " Comparison-of-Original-Contract-and-Final-Estimate-Quantities-and-Amounts ".

While the appeal was pending in the Court of Appeals, negotiations were entered into by the claimant to effect the payment to it of the sum of $112,488.23 which was admittedly due as a final payment under the contract. Thereafter, and as a result of such negotiations, a general release was executed by claimant under date of April 11, 1945, subject to the reservations therein contained which were substantially to the effect that the same was not to prejudice the claimant, the Long Island Rail Road Company, and the State of New York in their respective rights with reference and in relation to the claim of the claimant herein for extra work and services performed and rendered and extra materials furnished.

Thereafter and at a session of the Public Service Commission held on May 9, 1945, an order was made by said commission providing in part the following: " The Long Island Rail Road Company having submitted for approval Estimate 15-Final (Contract 3), dated January 3, 1945, showing $112,-488.23 as the amount due Tomasetti Construction Company, Inc., and the Commission having determined that the said Estimate should be approved, it is

" ORDERED That Estimate 15-Final (Contract 3) dated January 3, 1945 as submitted by The Long Island Rail Road Company in the amount of $112,488.23, be and it hereby is approved, and the Secretary of this Commission be and he hereby is authorized and directed to execute, in the name of this Commission, a voucher for the payment thereof.

By the Commission,<br>
(Signed) Murray G. Tanner<br>
Murray G. Tanner<br>
Secretary."

The State resists the granting of the relief herein sought by the claimant on the ground that the claim of the claimant herein, if any, accrued at the latest on November 9, 1942, when the claimant was advised by the engineer-in-charge by letter that the release executed by the claimant was not acceptable to the Long Island Rail Road Company and to the Comptroller of the State of New York. The claimant, on the other hand, urges that its claim did not accrue until January 3, 1945, the date of the so-called estimate No. 15-Final, which was submitted to the Public Service Commission and upon which the commission acted and ordered the payment to the claimant of the sum of $112,488.23 hereinbefore referred to. It is conceded by both claimant and the State that if the claim herein accrued more than two years before the return date of this motion (November 26, 1945), this court has no jurisdiction to make the order herein asked for. (*Undritz* v. *State of New York,* 179 Misc. 467; *Thompson* v. *State of New York,* 258 App. Div. 758; Court of Claims Act, § 10, subd. 5; L. 1939, ch. 860.)

The question to be determined by us is a narrow one: When did the claim of the claimant herein accrue? To resolve this question we must look to the contract itself, to the pertinent grade crossing elimination statutes which are involved herein, and to what has transpired under the contract between the claimant and the State of New York, its agents, servants and employees.

Contracts for grade crossing eliminations are, of course, governed by the provisions of grade crossing elimination statutes and of other statutes and laws of the State of New York and of the United States applicable thereto. (*Tomasetti Construction Co.* v. *Long Island R. R. Co.,* 294 N. Y. 501, 508, *supra.*) Furthermore, the instant contract expressly so provides in the following words: " This contract shall be governed by the provisions of Chapter 677, Laws of 1928; Chapter 289, Laws of 1939; Chapter 593, Laws of 1940, and all other statutes of the State of New York and of the United States and ordinances or local laws of the City of New York applicable thereto." (Contract-Special Specifications, 14-A., p. 12.)

The contract set forth in claimant's proposed claim contains certain provisions which are deemed expressly pertinent to the question which we must determine on this application. These provisions are as follows:

" Contractor's Monthly Statement.

" XXV. Each month, on or before the 10th day, the Contractor shall furnish the Engineer with a ' Statement ' of

the work done and material supplied by him during the calendar month preceding, in accordance with the directions and form prescribed herein:

" Engineer Furnishes Quantities.

" (a) The Engineer shall furnish the Contractor promptly with all the information and calculated quantities, which must be determined by him, essential for the preparation of the monthly statement of the Contractor.

" *Accounts Payable and Voucher*

" (h) This statement of the Contractor, when approved by the Engineer, shall be included in the monthly statement or ' Accounts Payable ' of the Engineer, prepared in accordance with Section XXVI. The work covered by the monthly statement or ' Accounts Payable ' of the Engineer and the amount thereof shall in turn be included in a voucher, which the Engineer shall prepare and submit to the Transit Commission for approval and transmission to the Comptroller of the State of New York for payment out of the State treasury in accordance with the provisions of Sec. 4 of the Grade Crossing Elimination Act of 1939.

" *Company's Monthly Statement and Voucher*

" XXVI. Payments shall be made by the Company during the progress of the work embraced in this contract, in accordance with a ' Statement ' or ' Accounts Payable ' prepared by the Engineer and based on the Contractor's monthly statement, described in Section XXV when approved as correct by the Engineer, and in accordance with the rules herein prescribed; it being understood, however, that the Company shall be under no obligation to make such payments until three (3) days shall have elapsed after receipt by it from the Comptroller of the State of New York of the monies covered by the voucher referred to in paragraph (h) of said Section.

" *Final Statement and Voucher*

" (c) When all the work embraced in this contract is completed agreeably to the specifications and in accordance with the directions. and to the satisfaction and acceptance of the Engineer, there shall be a final statement made by the Engineer of the quantity, character and value of said work, according to the terms of this agreement. The Engineer shall also make a voucher including the work covered by the foregoing final statement and the amount thereof, and submit the same to the Transit Commission for approval and transmission to the Comptroller of the State of New York for payment out of the State treasury in the same manner as hereinbefore provided in the case of monthly vouchers.

*" Final Settlement*

" (d) The balance appearing due to the Contractor shall be paid to him upon his giving the Company a release, under seal (on Form A.D. 260), from all claims or demands whatsoever growing in any manner out of this agreement, and upon his procuring and delivering to the Company full releases, in proper form and duly executed, from mechanics and material men, of all liens, claims and demands for materials furnished and provided, and work and labor done and performed upon or about the work herein contracted for under this contract; it being understood, however, that the Company shall be under no obligation to make such payment until three (3) days have elapsed after receipt by it from the Comptroller of the State of New York of the monies covered by the final voucher referred to in the preceding paragraph hereof."

Section 4 of the Grade Crossing Elimination Act of 1939 (L. 1939, ch. 289) above referred to, among other things, in pertinent part provides as follows: " The expense of every grade crossing elimination, the construction work for which is commenced after January first, nineteen hundred thirty-nine, * * * shall be paid in the first instance out of the state treasury to the persons and corporations entitled thereto from time to time on accountings and vouchers approved by the department or commission having jurisdiction under the acts enumerated in section two hereof upon audit and warrant of the comptroller."

The provisions of the contract hereinbefore referred to and above quoted at length, create an obligation of the Long Island Rail Road Company to do the things therein specified in order to obtain from the treasury of the State as provided by the Constitution and the statutes of the State, the moneys which would be required for the payment to the contractor in accordance with the terms of the contract, and to pay such moneys to the plaintiff (claimant) during the progress of the work, and upon the final settlement three days after receipt from the comptroller. (*Tomasetti Construction Co.* v. *Long Island R. R. Co.*, 294 N. Y. 501, 511, *supra.*)

These provisions of the contract establish the procedure to be followed relative to the periodical payments of money to the claimant during the progress of the work, and also for final payment and settlement upon final completion of the work. The procedure that they set forth had been followed " during the progress of the work ", and partial payments to the claimant, to the number of fourteen, had been made pursuant thereto.

Furthermore, these provisions carried out the provisions of the pertinent statutes with reference to accounting and payment. Each step therein contained, in our view, was a condition and an obligation which had to be met before the liability of the State to pay could be successfully enforced.

These provisions with reference to payment contemplate an audit of any claim such as the instant one, in the first instance at least by the Transit Commission; and although the comptroller would under the State Finance Law undoubtedly audit the same, it would probably be merely perfunctory in view of the provisions of the grade crossing elimination statutes and of the instant contract drawn in conformity thereto. (*Nellis* v. *State of New York*, 118 Misc. 612, affd. 204 App. Div. 176.)

In *Lighton* v. *City of Syracuse* (188 N. Y. 499, 505) is found the following: " ' Where a way of payment is prescribed by contract or by statute, that way must be strictly pursued.' " (*Swift* v. *Mayor, etc., of City of New York*, 83 N. Y. 528; *People ex rel. Ready* v. *Mayor*, 144 N. Y. 63.)

Where a particular mode of discharging the obligation of a municipal corporation is provided by law, that mode must be pursued; and it is only when the corporation is put in default in omitting to discharge some duty imposed upon it by a statute after proper steps have been taken that an action will lie (*Dannat* v. *Mayor*, 66 N. Y. 585), unless indeed it has by some act of its own, outside of the original indebtedness, rendered itself liable. (*Swift* v. *Mayor, etc., of City of New York, supra;* cf. *People ex. rel. Dannat* v. *Comptroller*, 77 N. Y. 45.)

This system of payments outlined in the contract herein clearly applied to all payments thereunder to be made from the treasury of the State, and no moneys could be drawn therefrom except in compliance therewith. The clear and explicit language used and the manifest purpose of the provisions are such that it cannot be supposed that any payment was to be excluded from the system so carefully devised. In our view, therefore, it was necessary, before the claim, if any, of the claimant herein against the State matured and accrued, thus placing it in a position to pursue whatever remedy the law afforded it under the contract, that a final statement be made by the engineer of the quantity, character and value of said work pursuant to the terms of the contract; and it was necessary further that the engineer make a voucher including the work covered by the final statement and the amount thereof, and submit the same to the Transit Commission for approval and transmission to the Comptroller of the State of New York for the payment

thereof out of the State treasury. Without the fulfillment of these conditions, the filing of claimant's claim would have been premature.

In *Delaware, Lackawanna & Western R. R. Co.* v. *Fengler* (262 App. Div. 685) the Appellate Division, Fourth Department, had occasion, to construe section 4 of chapter 289 of the Laws of 1939 and held that under said section, the Legislature had conferred upon the commission having jurisdiction, the duty of determining what are reasonable and necessary expenditures chargeable under the statute to the grade crossing elimination fund, and also the duty of approving and auditing the same; and it held further that any payment of expenses out of elimination funds could be made only on accountings and vouchers approved by the department or the commission having jurisdiction. It reversed, therefore, an order of the Supreme Court made in a condemnation proceeding fixing and determining the costs, disbursements and allowance to be paid to attorneys on the grounds that the court was without power to make that part of the order. This case was affirmed (*sub nom. Matter of Delaware, L. & W. R. R. Co.* v. *Fengler*, 288 N. Y. 141).

In *Matter of Tobin* v. *LaGuardia* (290 N. Y. 119) the Court construed section 70-a of the General Municipal Law (added by L. 1941, ch. 573), wherein it is provided that: " Notwithstanding any inconsistent provision of this chapter or of any law, general, special or local, whenever any municipal corporation is required by law to provide and pay any moneys to a corporate or other agency or instrumentality of the state for a public purpose, any reasonable expenses necessarily incurred by such an agency or instrumentality in compelling or enforcing by judicial proceeding payment to it of such moneys shall be a charge against such municipal corporation and such municipal corporation shall be liable therefor and shall pay the amount thereof upon certification and approval by the attorney-general, to such agency or instrumentality, provided vouchers therefor, properly certified and approved as required by this section, shall be presented to and filed with the chief fiscal officer of the municipal corporation within six months after final determination of such judicial proceedings in the case of any such expenses hereafter incurred, and in the case of any such expenses heretofore incurred within six months after this section as hereby added takes effect. The provisions of this section shall apply to and in the case of such expenses heretofore incurred subsequent to January first, nineteen hundred thirty-two, by such a state agency or instrumentality." And it held that where the

Attorney-General of the State of New York acting under said statute had approved a claim for its payment, the Comptroller of the City of New York had no jurisdiction to pass upon the reasonableness of the award made by the Attorney-General to the claimants since the statute provides that a charge certified and approved by the Attorney-General shall be paid by the municipal corporation accountable therefor. It held further that the statute directs that this course shall be pursued notwithstanding any inconsistent provision of any law, general, special or local. We construe these decisions to mean that the statute in each case had provided a method or means of payment which had to be pursued.

Claimant's claim, therefore, if any, did not mature and accrue, in our opinion, until the foregoing provisions as to payment had been complied with; and the time provisions of the Court of Claims Act did not commence to run until there had been such compliance therewith. (*Edlux Construction Corp.* v. *State of New York*, 252 App. Div. 373, affd. 277 N. Y. 635.) It is true that the *Edlux* case (*supra*) construed former section 12 of the Court of Claims Act (L. 1920, ch. 922, as amd.), and particularly the last sentence thereof which read as follows: '' But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon express contract, and such claim, or some part thereof, has been rejected by such tribunal or officer.'' It is equally true that this limitation is not now, nor was it during the period involved in the instant contract, contained in present section 9 of our Court of Claims Act, which section is the successor to former section 12. The State maintains that the *Edlux* decision (*supra*) does not apply. With that argument, we disagree. It seems to us that the holding in the *Edlux* case (*supra*) is applicable to the instant case. We can see no difference in principle between the legal effect of a condition or a limitation such as is involved herein, whether it be contained in a statute such as the Court of Claims Act, as in the *Edlux* case (*supra*) or contained in a statute such as a grade crossing elimination statute, or duly incorporated in a contract based upon such statute as in the instant case. The principle involved is the same. In each situation a condition exists the fulfillment of which we feel is prerequisite to the maturing and accrual of a claim. The *Edlux* case (*supra*) has been cited many times by the courts on this point of when a claim accrues.

In *Waples Co.* v. *State of New York* (16 N. Y. Ct. Cl. 54, 58) this court stated that a claim did not accrue until " the State Architect certified the final payment ". The judgment therein, modified in a respect not pertinent hereto, was affirmed by the Appellate Division (178 App. Div. 357.)

The letter of November 9, 1942, sent to claimant and signed by the chief engineer returning the releases to claimant and advising it that the same did not satisfy the requirements of the contract and were not acceptable to the Comptroller of the State of New York or the Long Island Rail Road Company does not satisfy the requirement of the statute and of the contract in the instant case, in the face of the clear and explicit language used therein and the manifest purpose of the provisions thereof. It cannot be supposed that any substitute therefor could be acceptable under the provisions so carefully devised. Submission to the Transit Commission for approval of the final statement included in the engineer's voucher as provided for by statute and by contract herein could not be dispensed with.

While undoubtedly the summary sheet (defendant's Exhibit X herein) was sent to the claimant with the letter of June 12, 1942, there is nothing before us to indicate that the engineer followed that up at that time by submitting it, together with the required voucher, to the Transit Commission or Public Service Commission for its approval and later transmission to the Comptroller of the State of New York as made mandatory by the provisions of the statute and the contract herein. On the contrary, the only final statement which appears from the papers before us ever to have been thus submitted is that numbered " Estimate No. 15-Final " and which is referred to in the order of the Public Service Commission, dated May 9, 1945, which order aforesaid is specifically referred to and set forth hereinbefore. This estimate is dated January 3, 1945, and follows chronologically and numerically the fourteen previous partial estimates.

Claimant admits receiving a copy of said " Estimate No. 15-Final ", and there is no doubt that it was approved by the Transit Commission (Public Service Commission ) sometime between January 3, 1945, the date of said estimate, and May 9, 1945, the date of the Public Service Commission order (claimant's Exhibit A herein) in which order specific recital is made

of the approval thereof. It is obvious from this order that approval of the final estimate could not have been obtained previous to January 3, 1945, the date appearing on said estimate.

We hold, therefore, that the claim of the claimant herein accrued not earlier than January 3, 1945, and that by reason thereof, the instant application has been made within two years of the accrual of the claim of the claimant herein, and is, therefore, timely made.

The motion of claimant, therefore, is granted.

Submit order accordingly.