ISADORE MICHAEL, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 25419.)

Court of Claims, July 22, 1946.

*Nathaniel L. Goldstein, Attorney-General (Burns F. Barford* of counsel), for defendant.

*Charles B. Sullivan* and *George M. Simon* for claimant.

RYAN, J. The claimant herein, Isadore Michael, is the assignee of the claim of Miller Brothers Construction Co., Inc., filed with the clerk of this court on March 24, 1939. The assignment bears date February 26, 1943, and the assignee has been substituted as party claimant herein by order duly made and entered.

The Attorney-General, by affidavit and notice of motion, has applied for an order dismissing the claim on the ground that the court is without jurisdiction to hear it because it was not duly filed. Upon the return day of the motion counsel agreed that the proceeding should take the form of a trial of the claim and the court received documentary proofs on the question of jurisdiction, that issue to be separately tried and determined at this time. The real question for our consideration is: When did the claim of Miller Brothers accrue? If it did not accrue more than six months prior to March 24, 1939, the Attorney-General's motion must be denied. (Court of Claims Act of 1920, § 15, subd. 4, as added by L. 1936, ch. 775; now § 10, subd. 4, as added by L. 1939, ch. 860.)

Under date of November 20, 1934, Miller Brothers contracted with the State of New York, through its Department of Public Works, Division of Highways, to construct 5.63 miles of highway, including bridges, in the county of Essex for the agreed price of $273,542.95. The contracting corporation entered upon and proceeded with the work and received seventeen estimates and progress payments, the last one of them, dated November 4, 1935, showing that the work done and materials in place to October 31, 1935, were of the value of $213,149.06 of which the State held in retained percentages the sum of $42,629.81.

It is alleged in the claim that the State delayed and interfered with the progress of the work and required the contractor to perform certain extra work for all of which the contractor requested a supplemental agreement. When this was refused, in the spring of 1936, the contractor advised the State that it deemed the contract breached and that it would not return to the site and complete performance. It appears that Miller Brothers did not in fact resume performance and under date of May 28, 1936, the Commissioner of Highways cancelled the contract. Thereupon, and in accordance with contract terms, the work was readvertised and relet to one Zoli. The final estimate on Zoli's contract was prepared by the Division of Highways and approved on or about February 23, 1937, receipt was signed by Zoli under date of February 25, 1937, and the document was transmitted by the Division of Highways to the Comptroller for payment under date of March 26, 1937.

An estimate known as No. 18 and final, which, like estimate No. 17, covered the materials and work in place October 31, 1935, Miller Brothers having done no work thereafter, was also prepared by the Division of Highways. It credits Miller Brothers with having performed work of the value of $221,-516.43, upon which that corporation had been paid $170,519.25, leaving an unpaid balance due it of $50,997.18, a revision upward of the figure appearing in estimate No. 17. Estimate No. 18 is dated July 31, 1936. A final agreement, bearing the same date and covering this final estimate, was also prepared by the Division of Highways for signature by Miller Brothers. Although this proposed agreement was approved by the State Comptroller under date of October 1, 1936, the Attorney-General has conceded on the record that it was never signed by anybody on behalf of Miller Brothers and an officer of that corporation now swears that no final estimate or agreement was ever received by it from the State of New York. His testimony is not disputed.

Upon completion of the work by Zoli the State of New York computed the excess cost thereof at $30,440.63 and charged this against the balance due Miller Brothers which it had retained. There remained the sum of $20,556.55. This sum was later and on May 2, 1940, disbursed by the State Comptroller to various creditors and lienors of Miller Brothers pursuant to a judgment of the Supreme Court, Westchester County, entered April 8, 1940, in an action brought by the County Trust Company of White Plains for the foreclosure of an assignment of moneys

due and to become due on the contract made to it by Miller Brothers. This judgment recites that Miller Brothers defaulted and failed to appear upon the trial of the action. We are not informed of the date when the summons and complaint therein were served upon Miller Brothers although it does appear that they were served upon the Attorney-General on or before February 26, 1937, and it may be presumed that service upon Miller Brothers was accomplished at about the same time. However, if the process and pleadings in that action, whenever served upon them, disclosed to Miller Brothers the details of the State's final estimate upon their contract or otherwise informed them as to the extent of their damages by its breach, the Attorney-General has failed to bring such facts to the attention of the court to controvert the proofs of the claimant. The only document relating to the action in evidence before us is the certified copy of the judgment.

Thus it appears that although the State of New York knew when its Division of Highways had made its surveys and measurements how much money Miller Brothers had earned, at contract prices, and knew, when Zoli's contract was finally approved, how much was the excess cost of completion of the work, the officers of the State never accounted to Miller Brothers until the distribution to that corporation's creditors in 1940. Indeed, although the State Comptroller approved the proposed, but unexecuted, final agreement on October 1, 1936, it is disclosed by Exhibit 7 that he did not finally audit the account of Miller Brothers, offsetting against the amount due them and deducting from such amount the excess cost of Zoli's completion contract, until April 25, 1940, after he had received the certified copy of the judgment hereinabove referred to.

In the meantime there were other occurrences. Under date of August 25, 1936, Miller Brothers filed with the Clerk of the Court of Claims a notice of intention to file claim for breach of contract alleging that " said claim arose on or about May 4, 1936," by the State of New York " refusing to execute (furnish claimant with) a supplemental contract providing for the performance of and payment for extra work required to be performed by claimant, which extra work was not included within this original contract nor contemplated by the terms of said contract, or to otherwise provide or arrange for payment to claimant for said extra work ".

No claim was filed within two years after May 4, 1936, but, under date of October 21, 1938, Miller Brothers applied to this court for an order permitting the filing of its claim in accord-

ance with the provisions of the Court of Claims Act then found in subdivision 5 of section 15 (L. 1920, ch. 922, as added by L. 1936, ch. 775, and amd. by L. 1937, ch. 515). The attorney and counsel for Miller Brothers who filed the notice of intention and who made the application for permission to file the claim is the same person who now represents this claimant, the assignee of Miller Brothers. In his affidavit supporting the application for permission to file the claim, counsel asserted that the notice of intention, filed August 25, 1936, had been prematurely filed; that the claim had not then accrued; that it was his belief that it had not yet accrued; that a possible construction by the court might place the date of accrual as February 23, 1937, when Zoli's final estimate was approved by the Commissioner of Public Works, and, if so, the application for permission to file was timely and the State had not been prejudiced. Permission was denied by order dated April 11, 1939, which order recited that the denial was " on the ground that if the claim has accrued within two years then reasonable excuse for the failure to file the notice of intention or claim has not been shown." Before that order was entered the claim now under consideration was filed. If that filing was timely, no permission of the court was necessary.

The present position of this claimant is, in general, consistent with the position taken by his assignor when the application pursuant to subdivision 5 of section 15 of the Court of Claims Act was made. In his affidavit filed with that application and verified October 21, 1938, counsel asserted the fact, corroborated by the present record, that the final estimate and final agreement were never forwarded to Miller Brothers by the State of New York. In the same affidavit, counsel stated that he had " recently " conferred with employees of the State's Department of Audit and Control and of the Division of Highways and from such conferences and from an examination of the files and records in the State's offices had discovered the final estimates and agreements of both the original contract and the completion contract and that " such instruments, for the first time, permitted deponent, with the aid of the claimant, to compute the sum claimed as damages." The motion for permission to file a claim was argued on November 5, 1938, and in his oral argument counsel referred to his conference with State department officials as having occurred " about two months ago, approximately ". No more specific date was then given. Counsel now testifies that the information contained upon the final estimate and agreement relative to the Miller Brothers contract and also upon the final estimate and agreement relative

to the completion contract became known to him for the first time on or about October 10, 1938, and that on or about October 17, 1938, he transmitted such information to the contractor. The latter date is corroborated by an affidavit of the former secretary of Miller Brothers Construction Co., Inc., verified outside of the State of New York and received as an exhibit upon this trial. No testimony controverting these specific dates has been offered on behalf of the defendant. The date when counsel obtained his information is of great importance and is binding upon the claimant. The discovery of the facts relating to the final estimates and agreements by counsel was notice to his client. (*Denton* v. *Ontario County Nat. Bank,* 150 N. Y. 126, 137; *McCutcheon* v. *Dittman,* 164 N. Y. 355; 7 C. J. S., Attorney and Client, § 69.)

Although counsel in his previous argument stated that he had knowledge of the final estimate about two months prior to November 5, 1938, such statement was an approximation. His present positive sworn statement that the date was October 10, 1938, must prevail in the absence of contrary evidence. If such evidence were available, it would seem that the Attorney-General would have presented it to us. This he has not done, and we therefore adopt the date October 10, 1938, as the occasion when claimant's assignor first had knowledge or was chargeable with knowledge of the final estimates on the original and on the completion contract. Until then, although the cause of action had accrued when the contract was breached, the damages had not accrued and the Statute of Limitations did not begin to run because there was no opportunity to enforce the obligation. (*Edlux Construction Corp.* v. *State of New York,* 252 App. Div. 373, affd. 277 N. Y. 635.) The contractor could not know the extent of the damages it had sustained until it was made aware of the State's measurements of the quantities of work done and materials in place and of the State's computations of the moneys earned up to the time of the cancellation of the contract and, in addition thereto, was informed of the extent of its liability for the excess cost to the State arising out of the completion contract. The obligation to supply the contractor with this information rested upon the State of New York. Claimant's assignor could not, of course, rest on its rights indefinitely but was required to act within a reasonable time. What was a reasonable time may be considered in the light of experience. In the *Edlux* case (*supra*) the breach occurred on May 4, 1933, and the final estimate was delivered to the contractor October 30, 1934. In *Tomasetti Constr. Co.* v. *State of New York* (186

Misc. 790) the contract was completed December 30, 1941, and the final estimate was approved sometime between January 3, 1945, and May 9, 1945. Here the breach occurred in May, 1936, the final estimate on Zoli's contract was transmitted to the comptroller March 26, 1937, and claimant's attorney made his investigation October 10, 1938. In our opinion this lapse of time was not unreasonable.

It has been suggested that under the authority of the *Edlux* decision (*supra,* p. 375) it could be said that there was not an accrual of the claim until April 25, 1940, for the reason that " Until audit by the Comptroller * * * there was no court in which suit could have been maintained on this claim ". However, inasmuch as the attorney for Miller Brothers Construction Co., Inc., acting on its behalf, obtained his information at an earlier date, viz., October 10, 1938, we have reached the conclusion that this claim then accrued. As it was filed within six months thereafter, the Attorney-General's motion to dismiss it for lack of jurisdiction must be denied.

Trial has been deferred because the State's engineer, an important witness, has been for some time past in the armed services of the United States and on duty abroad. If this witness is now available, the preliminary issue of jurisdiction being hereby determined, trial of the issues on the merits should proceed promptly. September 4, 1946, is hereby assigned for the continuance of the trial.

An order may be entered in accordance with the foregoing determination.