In the Matter of FRANCIS J. KOLB, Appellant, against
THOMAS L. HOLLING, as Mayor of the City of Buffalo,
et al., Respondents.

Argued January 6, 1941; decided March 6, 1941.

*Thomas J. O'Donnell* and *Godfrey M. Frohe* for appellant.

*John J. Bennett, Jr.,* Attorney-General, *amicus curiæ.*

*David Diamond, Corporation Counsel (John E. Livermore* of counsel), for respondents.

CONWAY, J. The petitioner is a rodman of the Grade Crossing and Terminal Station Commission, who is seeking an order directing the respondents to take appropriate steps so that money may be furnished by the city of Buffalo to pay his salary for a period in August and September, 1939. During the period of his employment from December, 1937, until August 1, 1939, petitioner's salary was paid by the city of Buffalo. Whether that method of payment shall be continued, and that is what petitioner desires, depends upon our construction of article 7, section 14, of the Constitution of the State of New York effective January 1, 1939, and of the same section as it existed in the Constitution prior to that date, as well as of the respective enabling acts relating thereto.

The Grade Crossing and Terminal Station Commission came into existence as a result of a consolidation (L. 1923, ch. 231) of two prior existing Commissions. Expenses of those Commissions and of the consolidated Commission were payable by the city of Buffalo under applicable statutes and the city was granted power to borrow money from time to time for the purpose of making such payments. It was the duty of the Mayor and Comptroller of the city to issue its bonds for such purposes in such amounts, payable at such times and bearing such rate of interest as the Common Council might from time to time determine.

In 1928 the Legislature enacted four statutes with a view to bringing about State-wide elimination of railroad grade crossings. Chapter 677 related to eliminations within the jurisdiction of the Transit Commission and was known as "New York City Grade Crossing Elimination Act."

Chapter 678 applied to eliminations outside the cities of New York, Buffalo and Syracuse. Chapter 679, entitled " Grade Crossing Elimination Act, applicable to the City of Buffalo," was operative there. Chapter 825 applied to eliminations in the city of Syracuse. The State thus sought to use existing available agencies in its State-wide effort.

Thereafter all grade elimination work in the city of Buffalo was performed under chapter 679 of the Laws of 1928 and none under the statute of 1923. Expenses of the " Buffalo Commission," as it was referred to in the act of 1928, were paid by the city of Buffalo and reimbursement thereafter made to it. (L. 1928, ch. 679, § 13.) The salary of the petitioner was paid by the city until August, 1939, *seven months after the new Constitution became effective.* That was the method devised by the Commission (a State body, L. 1928, ch. 679, § 12), the Legislature of the State, the city of Buffalo and the State Comptroller, for setting up payrolls for employees of the Commission and in paying them.

Not only was that the system devised and in operation until seven months after the adoption of the new State Constitution but the Attorney-General of this State has applied for and has been granted leave by this court to file a brief, *amicus curiæ,* in order to advise us that the State of New York asserts that section 2 of chapter 289 of the Laws of 1939 continues the policy and procedure of the prior enactment (L. 1928, ch. 679, § 4, subd. 1), and to urge that no intent to alter the procedure of payment and reimbursement may be found either in the constitutional amendment or the statutory enabling act.

We must then examine the reason for the change in position by the city of Buffalo in refusing to longer pay the salary of petitioner. The city urges that it is because of the new article 7, section 14, of the Constitution which became effective January 1, 1939, and states in its brief that " While the constitution remained in its 1928 form, the city continued to pay the expenses of the Buffalo Commission on the legal theory that the legislature still had the

power to compel the City to do so." It is conceded by petitioner and alleged in the respondent's answer that the services rendered during the period in suit were in connection with grade crossing elimination, the construction work for which was not commenced prior to January 1, 1939. If the new section of the Constitution necessitated a change in procedure, then of course the city is correct in its present attitude.

Under the old article 7, section 14, of the Constitution of the State which had been in force from 1927 to 1939, grade crossing eliminations were paid for as follows: Fifty per cent by the railroads, forty-nine per cent by the State and one per cent by the county (as far as Buffalo was concerned). None of the cost was payable by the city of Buffalo. Nevertheless, under that constitutional provision, the Commission, the city and the State, as indicated *supra*, construed the statute of 1923 and the statute of 1928 in a practical and constructive manner which worked successfully until 1939. In 1939, following the adoption of the new article 7, section 14, of the Constitution, the Legislature continued this practical, successful and business-like working arrangement for payment of elimination construction work done subsequent to January 1, 1939, by enacting chapter 289 of the Laws of 1939. Sections 2, 4 and 7 of that act are as follows:

" § 2. Chapters six hundred and seventy-seven, six hundred and seventy-eight, *six hundred and seventy-nine,* and eight hundred and twenty-five of the laws of nineteen hundred twenty-eight, and all acts supplementary thereto and amendatory thereof, shall continue to apply with full force and effect to the elimination of highway-railroad crossings at grade, the construction work for which was commenced before January first, nineteen hundred thirty-nine, and shall also apply to the elimination of highway-railroad crossings at grade, the construction work for which is commenced after January first, nineteen hundred thirty-nine, except that as to such eliminations upon which construction work is commenced after January first, nineteen hundred thirty-nine (1) the elimination shall

include incidental improvements rendered necessary or desirable because of such elimination, and reasonably included in the engineering plans therefor, as shall be determined by the commission having jurisdiction, and except (2) as the provisions of such act or acts are otherwise inconsistent with section fourteen of article seven of the constitution as now in force or with the provisions of this act."

" § 4. The expense of every grade crossing elimination, the construction work for which is commenced after January first, nineteen hundred thirty-nine, including incidental improvements connected therewith, as determined by the commission to be necessary or desirable because of the elimination and reasonably included in the plans for such elimination and railroad improvements not an essential part of the elimination but desired by the railroad company or companies, shall be paid in the first instance out of the state treasury to the persons and corporations entitled thereto from time to time on accountings and vouchers approved by the department or *commission* having jurisdiction under the acts enumerated in *section two hereof* upon audit and warrant of the comptroller. *Such expense shall be deemed to include any reasonable and necessary expenditures by a municipality, a railroad company or companies, a commission, the Buffalo commission, the Syracuse commission or the department of law of the state of New York made subsequent to November eighth, nineteen hundred thirty-eight and found by the commission having jurisdiction to have been made in contemplation of the commencement of construction after January first, nineteen hundred thirty-nine pursuant to article seven, section fourteen of the constitution of the state of New York, as amended, effective January first, nineteen hundred thirty-nine; provided, however, that all other expenses incurred prior to January first,* nineteen hundred thirty-nine, shall be repaid in accordance with the provisions of the acts enumerated in section two hereof, and applicable thereto."

" § 7. Where a commission, the Buffalo commission, the Syracuse commission, a municipality, the department or

the department of law of the State of New York has, under the provisions of the acts enumerated in *section two hereof* been authorized to incur any expense in connection with a highway-railroad grade crossing elimination, *similar expenses may be incurred after January first, nineteen hundred thirty-nine*, to enable it to perform its duties imposed by said acts as supplemented by this act. The commission having jurisdiction shall determine if such expenses are reasonable and necessary for the elimination or for incidental improvements made necessary or desirable thereby and, to the extent so determined, they shall be paid by the comptroller to the party or parties entitled thereto and included in the cost of the project."

The sections just quoted mean and can mean only one thing, viz., that the Legislature intended a continuance of the method of payment for elimination construction work done after January 1, 1939, in the same manner as for work done prior thereto.

The only reason urged by the city of Buffalo as indicating necessity for a change in the method of payment of petitioner's salary is the insertion or presence in the new article and section of the words " shall be paid by the state in the first instance." (N. Y. Const. art. 7, § 14.) The use of those words by the Constitutional Convention bore no relation to any conceived or attempted change in the method of payment theretofore obtaining through the city of Buffalo, subject to reimbursement. Those words related to the proposal that as between the State and the railroads, the State was to pay for the entire elimination in the first instance and thereafter to receive payment from the railroads as provided in the constitutional amendment. An examination of the Revised Record (Vol. 2, pp. 902–905 and 1036–1043) of the New York State Constitutional Convention of 1938 indicates the manner in which and the purpose for which those words were written into the Constitution.

The constitutional amendment as originally proposed bore Introductory Number 89. As so proposed, the State was to pay for grade-crossing eliminations in their entirety.

On July 12, 1938, an amendment of the proposal was moved by Mr. Fearon (p. 902) as follows:

" Mr. Fearon: I move to amend the proposal by striking out line 14 on page 3, the following words: ' shall be borne wholly by the State,' and by further amending the bill by adding at the end of line 15 on page 3 the following, change the period to a comma and add the following words, ' shall be paid by the State in the first instance, but the State shall be entitled to recover from the railroad company or companies, by way of reimbursement, * * *.' "

On July 18, 1938, a further amendment was proposed by Mr. Moses in substitution for Mr. Fearon's amendment (pp. 1032, 1033). That second amendment retained the words as quoted up to the word " reimbursement " and then worded the balance of the section as it was finally adopted by the Convention and by the People.

The debate clearly indicates that the whole purpose of the amendments of Mr. Fearon and Mr. Moses was to compel the railroads to pay for (1) the entire amount of the railroad improvements not an essential part of the elimination, and (2) the amount of the net benefit to the company or companies from the elimination exclusive of such railroad improvements, the amount of such net benefit to be adjudicated *after* the completion of the work in the manner to be prescribed by law, and in no event to exceed fifteen per cent of the expense of the elimination, exclusive of all incidental improvements.

The controversy was entirely over the question whether the railroads should pay something or the State should pay all. From the debate it is quite evident that no delegate had in mind changing or altering the certification, bookkeeping or payment methods which had been worked out by the Commission, the Legislature, the State Comptroller and Attorney-General and which had functioned satisfactorily for more than nine years. There is nothing in the change of wording between old and new article 7, section 14, which had any relation to the method of payment of petitioner's salary prior to the adoption of the new Constitution.

Under the old provision and chapter 679 of the Laws of 1928 not one dollar of the money of the city of Buffalo went to pay petitioner's salary, yet the Commission certified the payroll upon which petitioner's name appeared and his salary was paid by the city and reimbursed to it. Under the new constitutional provision and the enabling act (L. 1939, ch. 289), not one dollar of petitioner's salary was to be paid eventually by the city of Buffalo and yet the Legislature in terms, under section 2 of that act, quoted *supra,* provided for the continuance of the method of payment followed under chapter 679 of the Laws of 1928 for work undertaken subsequent to January 1, 1939.

The practical construction put upon a constitutional provision, as well as upon a statute, by the Legislature or by departments of State government, is entitled to great weight, if not controlling influence, when such practical construction has continued in operation over a long period of time. (*People* v. *Home Ins. Co.,* 92 N. Y. 328, 337; *City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543, 548; *People ex rel. Joyce* v. *Brundage,* 78 N. Y. 403, 406; *People ex rel. Williams* v. *Dayton,* 55 N. Y. 367, 378; *City of New York* v. *Fifth Avenue Coach Co.,* 237 App. Div. 383, 398; affd., 262 N. Y. 481; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367, 376.)

The following quotations seem peculiarly applicable here: " * * * These expositions are entitled to great weight, as they evince the sense in which the language was understood at the time. It is not unlikely that the Legislature was composed of some of the same persons who composed the constitutional convention. At all events the discussions in and out of the convention were then fresh, and the Legislature would naturally be governed by considerations similar to those which actuated members of the convention. * * * The weight to be given to contemporaneous construction is well expressed by MARCY, J., in *People* v. *Green* (2 Wend. 274). He says: ' Great deference is certainly due to a legislative exposition of a constitutional provision, and especially when it is made

almost contemporaneously with such provision, and may be supposed to result from the same views of policy, and modes of reasoning which prevailed among the framers of the instrument propounded.' " (*People ex rel. Joyce* v. *Brundage*, 78 N. Y. 403, 406.)

" The practical construction of the clause in question by the Legislature, commencing with the adoption of the amendment of 1853 and continued to the present time, which has been acquiesced in and acted upon by the executive and administrative departments of the government, and which, so far as we know, has never before been questioned, is entitled to great, and we think controlling, weight in its interpretation. It has almost the force of a judicial exposition (Story on Const., § 408), and, unless such legislation and practice is manifestly in violation of the words used, the greatest weight should be given to it in construing them. (Cooley Const. Lim., 67, and cases cited.) " (*People ex rel. Williams* v. *Dayton*, 55 N. Y. 367, 378.)

It seems to us that the granting of the relief prayed for will continue the orderly method of paying petitioner's salary as contemplated by the Legislature and as followed by the city of Buffalo since at least 1911 and including a period of seven months after the adoption of the new Constitution and that no violation of a constitutional mandate will be occasioned thereby.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

Lewis, J. (dissenting). By the decision about to be made the payment for any grade crossing elimination work, including the expense incurred for work incidental to the elimination, which was commenced in the city of Buffalo after January 1, 1939, is authorized to be made in the first instance from funds supplied by the city and payable through the local Grade Crossing and Terminal Station Commission. My dissent from the view of a majority

of the court rests upon my interpretation of article 7, section 14, of the State Constitution, effective January 1, 1939, which, in language clear and unequivocal, directs that "*The expense of any grade crossing elimination the construction work for which was not commenced before January first, nineteen hundred thirty-nine, including incidental improvements connected therewith* as authorized by this section, whether or not an order for such elimination shall theretofore have been made, *shall be paid by the state in the first instance* * * *.*" (Emphasis supplied.)

I find nothing in chapter 289 of Laws of 1939 — an act supplementing the Grade Crossing Elimination Act, applicable to the city of Buffalo — which supports the practice about to be approved. That statute provides, subject to a significant exception presently to be noted, that chapters 677, 678, 679 and 825 of the Laws of 1928, and acts supplemental and amendatory thereof, shall continue to govern the procedure applicable to the payment for all grade crossing elimination projects commenced in the city of Buffalo after January 1, 1939. However, the Legislature was careful to avoid any conflict with the last amendment to article 7, section 14, of the Constitution by expressly providing the following exception, which exerts a controlling influence upon my view of the problem presented by the proceeding now before us: " * * * and except (2) as the provisions of such act or acts are otherwise inconsistent with section fourteen of article seven of the constitution as now in force or with the provisions of this act." (§ 2.) By this exception the Legislature clearly recognized that a fundamental change in State policy in relation to the payment of the cost of highway crossings by railroads at grade had taken place.

One of the clear purposes of that change, as I view it, was to relieve municipalities of future expense in connection with grade crossing eliminations. Thereafter the State, at the outset, was to pay the entire cost of each project and was to be reimbursed by the railroads. No authority exists, legislative or judicial, by which a different procedure may be made effective. True, it may be that for a long

period of years incidental expenses, such as the petitioner's wage, have been paid in the first instance from funds supplied by the city of Buffalo. And it is not difficult to understand why State fiscal agents are quite willing to have that practice continue. It may also be true that to continue the practice of past years may serve local convenience. But the fact is that practice does not accord with — indeed, it disregards — the plain language of our present Constitution, which directs that such an expense " shall be paid *by the state* in the first instance." I indulge in the permissible presumption that the framers of that mandate " understood the force of the language used and, as well, the people who adopted it." (*People* v. *Rathbone*, 145 N. Y. 434, 438.)

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY and DESMOND, JJ., concur with CONWAY, J.; LEWIS, J., dissents in opinion.

Ordered accordingly.