Keating, J.
This appeal presents for our consideration an attack upon the constitutionality of a legislative program enacted to aid the growth and development of a business enterprise — harness racing tracks and related operations — which provides substantial revenues to the State and its subdivisions and which the Legislature has found constitute “ an important part of the economy of the state ” (L. 1965, ch. 567, § 1).
The legislation in question created the Agriculture and New York State Horse Breeding Development Fund as a body corporate and politic constituting a public benefit corporation ‘[1] within the state harness racing commission” (Pari-Mutuel Revenue Law, § 55-a, as added by L. 1965, ch. 567). The fund is administered by the Commissioner of Agriculture and Markets, the Chairman of the Harness Racing Commission and three trustees appointed by the Governor. The fund derives its revenues from private racing associations which are required to pay to it 25% of the “ breaks ” (“ odd cents over any multiple of ten, calculated on the basis of one dollar and otherwise payable *122 to a patron ”). The fund is authorized to deposit the moneys received in several segregated accounts and to disburse them for various programs designed to foster the continued growth and prosperity of the industry.*
The plaintiff-appellant, th,e Saratoga Harness Racing Association, Inc., a licensed private horse-racing corporation, has commenced this action to enjoin the fund from collecting some $45,222.89 of “ breakage ” moneys, held by the association. The association urges that the legislative program outlined above violates article I (§ 9, subd. 1) and the provisions of article VII (§7) of the New York State Constitution.
We agree with both courts below that this contention is without merit.
Section 9 of article I of the Constitution creates an exception to the constitutional prohibition of gambling and permits parimutuel betting on horse races “ as may be prescribed by the legislature and from which the state shall derive a reasonable revenue for the support of government ”. The revenues required to be turned over to the fund, the association argues, will not be expended for “ the support of government” and, therefore, the statute is unconstitutional.
The association’s contention is premised upon an erroneous reading of the constitutional provision. Exclusive of the 25% of “ breakage ” involved here, harness racing is a source of substantial revenue (50% of the “ breakage ”) for the support of government. There is nothing in the amendment which requires that all revenue in excess of expenses be devoted to the direct support of government or which prohibits the Legislature, as a condition to granting a license to a private racing association, *123 from requiring that a certain portion of the revenues derived from racing be set aside for the general improvement of the sport and the facilities used. The Agriculture and New York State Horse Breeding Fund is the instrument through which the Legislature has chosen to effectuate this legitimate public interest and purpose. We perceive no constitutional impediment arising out of .section 9 of article I which requires that this legislative scheme be struck down.
The argument advanced by the association with regard to section 7 of article VII is likewise without merit. This provides that “No money shall ever be paid out of the state treasury or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years next after the passage of such appropriation act; and every such law making a new appropriation or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object or purpose to which it is to be applied; and it shall not be sufficient for such law to refer to any other law to fix such sum.”
The association argues that the revenues collected by the fund constitute a fund under the management of the State and that, since expenditures may be authorized by the members of the fund “ without control by the State’s budgetary and legislative process,” there is present “ a clear violation of the foregoing constitutional requirement.”
We shall assume for the purpose of determining the merits of this argument that the association has standing to attack, in a proceeding such as this, the validity of expenditures made by the fund (see, generally, St. Clair v. Yonkers Raceway, 13 N Y 2d 72, cert. den. 375 U. S. 970; Schieffelin v. Komfort, 212 N. Y. 520).
An analysis of the purpose sought to he vindicated by section 7 of article VII leads us to the conclusion that the Agriculture and New York Horse Breeding Development Fund is not a fund under the management of the State as that term is employed in the Constitution. Clearly, as we have held, not every fund made up of public moneys raised through taxation or otherwise comes within the purview of section 7 of article VII (Matter of Clark v. Sheldon, 106 N. Y. 104; People ex rel. Evans v. Chapin, 101 N. Y. 682). Whether a fund, not directly held or managed by *124 the State but by a public benefit corporation, comes within the purview of the constitutional provision should be determined by an examination of the purposes sought to be attained by it.
The history of section 7 of article VII indicates that it was motivated by a concern that, absent legislative control over expenditures, it was possible for the State to incur obligations in excess of its actual income and thus [1] ‘ leave burthens for the future, and severe taxation or repudiation, the meanest of all things”. (2 Lincoln, Constitutional History of New York, p. 183.)
The legislation with which we are concerned in this case created a corporate entity whose obligations do not become the obligation of the State and, indeed, whose expenditures are effectively limited to income (Pari-Mutuel Revenue Law, § 55-c, subds. 1, 2). Moreover, there is no possibility, as the dissenting opinion suggests (p. 130), that “ public visibility of legislative control over the raising of revenues and their disbursement ” will be endangered. The legislation specifically provides the method of raising revenue and specifically defines what proportion of the funds actually collected are to be allocated for the various programs designed to further the legislative purpose (Pari-Mutuel Revenue Law, § 55-c, subd. 1). In essence all that is left to the “ Fund ” is the administration of the expenditures in accordance with the legislative mandate.
To strike this legislation down would needlessly hamper and cripple a significant legislative program. Such a result is not mandated by the language, purpose or spirit of section 7 of article VII of the Constitution.
We have examined the remaining arguments advanced by the association and find them to be without merit.
The order of the Appellate Division should be affirmed, with costs.

 Section 55-c (subd. 1) provides for the distribution as follows:
“ (a) Two and one-half per cent thereof in an account designated ‘ administration ’.
“(b) Two per cent thereof, in an account designated '4-H standard bred development program ’.
“ (c) Three per cent thereof in an account designated ‘ New York state exposition horse facility maintenance and construction ’.
“ (d) Seven and one-half per cent thereof in an account designated ' New York state exposition breeding farms.’
“ (e) Ten per cent thereof in an account designated ‘ county and town agricultural societies’.
“ (f) Seventy-five per cent thereof in an account designated ‘ New York state breeding farms ’.”

. Section 55-e (subd. 1) provides for the distribution as follows:
" (a) Two and one-half per cent thereof in an account designated ‘ administration ’.
“ (b) Two per cent thereof, in an account designated ‘4-H standard bred development program ’.
“ (c) Three per cent thereof in an account designated ‘ New York state exposition horse facility maintenance and construction ’.
“ (d) Seven and one-half per cent thereof in an account designated ‘ New York state exposition breeding farms.’
“ (e) Ten per cent thereof in an account designated ‘ county and town agricultural societies’.
“ (f) Seventy-five per cent thereof in an account designated [1] New York state breeding farms’.”