WARREN M. ANDERSON et al., Respondents, v EDWARD V. REGAN, as New York State Comptroller, et al., Appellants.

Third Department, June 1, 1981

APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Shirley Adelson Siegel* of counsel), for appellants.

*John F. Haggerty* for respondents.

OPINION OF THE COURT

*Per Curiam.*

This controversy concerns the legality of expenditures of moneys, without an appropriation by the State Legislature, received by the State from the Federal Government and held in a joint custody fund under the control of the State Comptroller and the Commissioner of Taxation and Finance. The funds are released on warrant of the Comptroller directly to State agencies upon application. The underlying action seeks a judgment declaring that such ex-

penditures violate section 7 of article VII of the New York State Constitution which provides, in pertinent part, as follows: "No money shall ever be paid out of the state treasury or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law".

Special Term agreed with plaintiffs (107 Misc 2d 335) and granted summary judgment on the ground that defendants failed to prove that Federal funds are not subject to the constitutional mandate. This appeal ensued. We arrive at a contrary conclusion and are to reverse.

While the issue is one of broad constitutional implications, it is in fact a very narrow one. Does section 7 of article VII of the New York State Constitution mandate that such Federal grants be expended by legislative appropriation? The facts are not in dispute and we find no case dealing with the precise issue.

As a general rule, when interpreting a constitutional provision the language should be accorded its plain meaning *(People v Carroll*, 3 NY2d 686, 689). The fact that the provision may be unambiguous on its face, however, is rarely conclusive (see *New York State Bankers Assn. v Albright*, 38 NY2d 430, 436). Where aids to construction are available, their use should not be thwarted through blind adherence to the literal interpretation of provisions lacking facial ambiguity (see *United States v American Trucking Assns.*, 310 US 534, 543-544). Accordingly, even though the constitutional provision in question appears unambiguous on its face, we are obligated to inquire further to assure that our interpretation is correct. In this regard, it is to be noted that the practical construction put upon a constitutional provision by the Legislature and continued over a long period of time is entitled to great weight, if not controlling influence *(Matter of Kolv v Holling*, 285 NY 104, 112).

At the outset, we note that the funds in question have always been expended without legislative approval. The record indicates that the original constitutional provision was designed to prevent the unauthorized disbursement of only those funds collected by the State. It was enacted to

insure that the State did not incur obligations in excess of its actual income *(Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund,* 22 NY2d 119, 124). Clearly it is not possible for the State to overspend a Federal grant and thereby incur excess State obligations. In light of the original purpose of the provision and the fact that much of the Federal money is earmarked for a specific purpose, it is understandable and logical that the Legislature would distinguish between Federal funds received by the State and moneys collected by the State through taxation.

The propriety of such a practice is bolstered by an examination of legislative documents. A 1937 Report of the Joint Legislative Committee on State Fiscal Policies, in urging that all State expenditures be placed in the budget regardless of their source, drew a critical distinction between appropriated and unappropriated funds suggesting that detailed estimates of Federal funds be included in the budget in a manner similar to the estimates of State appropriations (NY Legis Doc, 1938, No. 41, p 30). Furthermore, in chapter 593 of the Laws of 1940, which required the placing in the budget of any moneys from the Federal Government, it was specifically noted that such funds were "not appropriated by the legislature" (State Finance Law, § 22, subd d).

Recently, a bill proposed in the New York Legislature and sponsored by plaintiffs (S 7840-C, A 10244-C [1978]) would have required the legislative appropriation of Federal funds held by the State. However, certain exceptions to the appropriation requirement were included in the bill. Such a bill indicates implicitly that it was the apparent belief of the plaintiffs that all such funds do not have to be appropriated by the Legislature. We are of the opinion that the construction given by the Legislature and State officials to the constitutional provision should prevail over its plain language and conclude that moneys received by the State from the Federal Government do not come within the purview of section 7 of article VII of the New York State Constitution (see *Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund,* 22 NY2d 119, *supra).*

The judgment of Special Term should be reversed, and judgment directed to be entered declaring that section 7 of article VII of the New York State Constitution does not require legislative appropriation of Federal funds.

HERLIHY, J. (dissenting). The majority concede that section 7 of article VII of the New York State Constitution (hereinafter referred to as section 7) is unambiguous on its face.

Admittedly, there have been cases in the past where the Legislature has chosen not to treat certain moneys or funds as requiring appropriation acts before State agencies could expend such moneys within their budgets (see *Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund*, 22 NY2d 119; cf. *Metropolitan Transp. Auth. v County of Nassau*, 28 NY2d 385; *People ex rel. Evans v Chapin*, 101 NY 682). However, such instances, over a period of about 135 years, together with the statutory references posited by the defendants, do not support the narrow view of the majority that there has been a definitive construction of section 7 as being for the sole purpose of controlling moneys *raised* by the State.

The courts, as well as the executive and legislative officers of the State of New York, must recognize that the Constitution represents the *only direct written expression* of the will of the People of this State. To exempt its application in the future to transactions which, upon their face and without doubt fall within the language used, is to adopt a course fraught with the danger of denying the People the right of self-government.

The distinction between the Legislature's interpretation of *its statutes* as controlling the legislative interpretation of *its powers* can be seen in the approach taken by the Court of Appeals in the cases of *Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman* (52 NY2d 463) and *Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund* (22 NY2d 119, *supra*).

The sole issue in this case is whether or not the Federal funds come within the section 7 meaning of "money * * * of the state treasury or any of its funds, or any of the funds under its management".

In the *Saratoga Harness* case, the fund at issue was one created by legislative action and at issue was the expenditure of the income. The majority in that case found that the fund at issue was not one within the meaning of section 7. Unlike the *Saratoga Harness case*, these Federal funds are paid to the State of New York. Notably, in *Saratoga Harness (supra,* p 124), the agency involved was one "whose obligations do not become the obligation of the State" and, accordingly, the case of *Saratoga Harness* is inapposite.

In the instant case, we are directly concerned with funds to be disbursed for general public purposes. To call them Federal funds simply describes their source, and in any event, the approach taken by the majority in *Matter of Kolb v Holling* (285 NY 104) requires looking to the intent of the framers of the Constitution and then considering the method adopted by the Legislature to carry out the intent.

The facts of this case present a situation squarely within the analysis of section 7 by then Associate Judge BREITEL of the Court of Appeals in his dissent in the *Saratoga Harness* case: "The language of the constitutional provision does not permit this narrow interpretation. The section provides that no money shall ever be paid 'out of the state treasury or any of its funds, or any of the funds under its management' except upon legislative appropriation * * * The * * * moneys to be held * * * are in fact and in law funds under the management of the State within the meaning of this section * * * Control by the Legislature through regular appropriation, restrictions on the Legislature to make current appropriations only on a two-year basis at the outside, the public visibility of legislative control over the raising of revenues and their disbursement, and the executive-legislative balancing of the budget are objectives of the highest importance in State government, sought and achieved through a long historical and constitutional development." *(Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund,* 22 NY2d 119, 129-130.) It is academic that the Federal authorities might at any time not pay over to the State funds otherwise authorized or might seek to impound funds already paid over or that such funds might be paid in a lump sum without designation or by some other manner of payment. Under

such circumstances, the analysis of section 7 by former Chief Judge BREITEL is entirely applicable to funds which, in the 1980-81 fiscal year, approached 6.6 billion dollars.

The literal reading of the section of the Constitution is mandated in this particular proceeding.

In sum, in interpreting the language of the Constitution, the intent of the framers is to be sought, as expressed in *McCluskey v Cromwell* (11 NY 593, 601-602) : "first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable, to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture, in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction, for the purpose of either limiting or extending their operation. Courts cannot correct supposed errors, omissions or defects in legislation, or vary by construction, the contracts of parties. The office of interpretation is to bring sense out of the words used, and not bring a sense into them."

If any complication arises or other action is required as a result of this decision, it is a matter for the Executive and the Legislature to adjust. (See *Matter of Anderson v Krupsak*, 40 NY2d 397, 403-404.)

The judgment should be affirmed.

MAHONEY, P. J., SWEENEY, CASEY and WEISS, JJ., concur; HERLIHY, J., dissents and votes to affirm in an opinion.

Judgment reversed, on the law, without costs, and judgment directed to be entered declaring that section 7 of article VII of the New York State Constitution does not require legislative appropriation of Federal funds.