[831 NYS2d 160]

In the Matter of GREGORY V. SERIO, as Superintendent of the New York State Insurance Department Liquidation Bureau, et al., Respondents, v ALAN G. HEVESI, as Comptroller of the State of New York, Appellant.

First Department, March 6, 2007

## APPEARANCES OF COUNSEL

*Cleary Gottlieb Steen & Hamilton LLP*, New York City (*Evan A. Davis* and *Michael J. Byars* of counsel), and Office of the State Comptroller, Albany (*Alan P. Lebowitz, Helen M. Fanshawe, Albert Wm. Brooks, John K. Dalton* and *Michael E. Kupferman* of counsel), for appellant.

*Davis Polk & Wardwell*, New York City (*Guy Miller Struve, Jerome G. Snider, Kevin C. Wallace, Julian J. Moore, Joshua D. Liston* and *Shannon K. Manigault* of counsel), and *Steven Harris*, New York City, for respondents.

## OPINION OF THE COURT

TOM, J.P.

At issue on this appeal is the authority of respondent Comptroller to perform an audit of the official accounts and monies under the control of the Liquidation Bureau of the New York State Insurance Department as well as its internal management and procedures. The case is one of first impression involving the respective constitutional and legislative authority of the Comptroller of the State of New York and the Superintendent of the New York State Insurance Department.

By way of background, it is appropriate to observe that the Superintendent of Insurance has two distinct roles—one administrative and public, as the regulator of the insurance industry, and the other judicial and private, as the liquidator or rehabilitator of a distressed insurer. Thus, in his public capacity, the Superintendent oversees the regulation of insurers licensed in the State of New York, while in his private capacity, he acts as a court-appointed receiver on behalf of an insolvent or distressed insurer.

The Superintendent's private, judicial function is prescribed by Insurance Law article 74, under which he is charged with

rehabilitating, liquidating and conserving the assets of insolvent insurance companies. This process is managed by the staff of the Insurance Department's Liquidation Bureau, whose numbers may be augmented by personnel retained from the subject insurance company. Under the statute, Superintendent Serio is granted exclusive authority to apply to the court for an order to either rehabilitate or liquidate the business of a distressed insurer (Insurance Law §§ 7402, 7404).

As rehabilitator or liquidator, the Superintendent manages the estates of insolvent insurers as a fiduciary under the supervision of Supreme Court (Insurance Law § 7403 [a]; § 7405 [a]; § 7407 [a]). Because the insurer is generally in disarray, the Liquidation Bureau undertakes to fulfill the distressed company's obligations to its policyholders and to protect the interests of creditors for the period of time necessary to rehabilitate or liquidate the business. However, the authority to decide claims against the assets of the insurer remains with the court.

Originally, the liquidation of insurers was treated no differently than the liquidation of corporations generally. A receiver was appointed by the court to marshal the insurer's assets and to devise a reorganization plan or effect dissolution, subject to court approval. In 1909, reform legislation was enacted, entrusting the role of receiver exclusively to the Superintendent of Insurance.

The 1909 legislation added Insurance Law § 63 (L 1909, ch 300, § 1, repealed by L 1932, ch 191, § 1, and reenacted as Insurance Law art XI) and 1908 Legislation amended the Banking Law (L 1908, ch 143; see Matter of Union Bank of Brooklyn, 204 NY 313, 316-317 [1912]) to provide

> "for the liquidation of insurance companies and banks by substituting liquidation by the Insurance Department or the Banking Department, as the case might be, for liquidation by receivers appointed by the courts . . . Analysis of the provisions of section 63 and of article XI discloses that it was not the legislative intent to substitute the Superintendent of Insurance for the courts in the handling of delinquent insurers but merely to deprive the court of the power to appoint persons other than the Superintendent of Insurance as receiver of such insurers, at the same time continuing the previously existing inherent general jurisdiction of the court" (Matter of Lawyers Mtge. Co., 169 Misc 802, 826-827 [1938] [citations omitted], affd 256 App Div 974 [1939]).

An insurance company is considered to be insolvent when

"the superintendent finds from a financial statement or report on examination that [it] is unable to pay its outstanding lawful obligations as they mature in the regular course of business, as shown by an excess of required reserves and other liabilities over admitted assets, or by its not having sufficient assets to reinsure all outstanding risks with other solvent authorized assuming insurers after paying all accrued claims owed" (Insurance Law § 1309 [a]).

An order of liquidation directs the Superintendent to take possession of the property of the insurer, title to which vests, by operation of law, in the Superintendent (Insurance Law § 7405 [b]). However, the Superintendent may dispose of the insurer's assets only with the approval of the court (Insurance Law § 7428); distribution of such assets must both comply with statutory claim priorities and conform to the direction of the court (Insurance Law § 7434). Approved claims under policies issued by the insolvent insurer are paid out of a security fund (Insurance Law §§ 7603, 7604) financed from payments made by insurers under a prescribed statutory formula (Insurance Law § 7603 [b]; § 7604 [b]). Because payments from a security fund are limited to claims arising out of insurance policies, the approved claims of creditors are paid out of the assets of the insolvent insurer.

This special proceeding was precipitated by the Comptroller's service of subpoenas on the Superintendent and eight employees of the Liquidation Bureau seeking their testimony concerning all official accounts and moneys under their control, as well as the books and records required to be maintained with regard to abandoned property reports filed with the Comptroller.[1] The Comptroller proposes to examine every aspect of the liquidation

---

1. Abandoned Property Law § 102 provides: "It is hereby declared to be the policy of the state, while protecting the interest of the owners thereof, to utilize escheated lands and unclaimed property for the benefit of all the people of the state." Abandoned property includes "all money or other personal property collected or received by the state comptroller or the department of taxation and finance pursuant to the provisions of . . . [Insurance Law § 7434 (c)]," which relates to the distribution of assets to claimants of another state or foreign country (Abandoned Property Law § 103 [b] [iii]). Abandoned Property Law § 705 (1) provides:

"Upon filing the final report or accounting of the superintendent of insurance, as liquidator, closing any proceeding commenced under article seventy-four of the insurance law, all unclaimed

and rehabilitation process as well as the Bureau's internal policies and management. The subpoenas request information concerning insurance companies under the Bureau's supervision since January 1, 2001, including, inter alia, financial reports, details of the Bureau's procedures for hiring and compensation of staff, lawyers and consultants, assignment of vehicles and cell phones, the allocation of funds to monthly expenditures and bank account statements. The avowed purpose of these subpoenas is to ascertain whether the financial management and operating practices of the Liquidation Bureau are effective in fulfilling its responsibility to liquidate and settle the affairs of insolvent insurance companies and to establish the accuracy and completeness of abandoned property reports submitted to the Comptroller under the Abandoned Property Law. Petitioner Superintendent objected to the subpoenas and moved to quash them, arguing that the Comptroller lacks the authority to audit the Liquidation Bureau.

In the judgment appealed from, Supreme Court agreed with the Superintendent that the Comptroller has no power to audit the operations of the Liquidation Bureau, granted the application to quash the subpoenas and declared that NY Constitution, article V, § 1, State Finance Law § 111 and Abandoned Property Law § 1412-a neither empower the Comptroller to pre-audit or post-audit the financial management and operations of the Liquidation Bureau nor grant him authority to audit the property of insolvent insurers held by the Superintendent.

This Court concludes that the Comptroller has statutory authority to conduct audits of the Superintendent's handling of the dissolution or rehabilitation of distressed insurance companies and to review the internal financial controls and management procedures of the Liquidation Bureau. We therefore reverse the order and reinstate the subject subpoenas.

Authority to audit the affairs of the Liquidation Bureau is found in two statutory provisions defining "powers and duties" assigned to the Comptroller by the Legislature, both of which concern the Comptroller's power and duty to examine the accounts of funds held by a state officer or state agency. The first,

and undistributed dividends and other assets of every nature and description whatsoever, including assets of a special or trust nature, which have been held by the liquidator for five years or more, and which the liquidator has not been specifically directed to hold for a longer period by supreme court order, shall be deemed abandoned property."

State Finance Law § 111, is the statutory counterpart of NY Constitution, article V, § 1, which gives the Comptroller broad audit power:

> "The comptroller shall be required: (1) to audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties. The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon audit by the comptroller, shall be void, and may be restrained upon the suit of any taxpayer with the consent of the supreme court in appellate division on notice to the attorney-general. In such respect the legislature shall define the powers and duties and may also assign to him or her: (1) supervision of the accounts of any political subdivision of the state."

The audit power at issue in this proceeding is derived from the constitutional prohibition against the payment of state moneys "except upon audit by the comptroller," added by a 1938 amendment. It was codified in State Finance Law § 111, which similarly provides:

> "No moneys of the state, including moneys collected in its behalf, and no moneys in the possession, custody or control of any officer, agent, or agency of the state in his or its representative capacity, and no moneys in or belonging to any fund or depositary, title to which is vested in the state, shall hereafter be paid, expended or refunded except upon audit by the comptroller."

The audit of the Liquidation Bureau that the Comptroller seeks to conduct involves a review of the handling of funds entrusted to the Superintendent, as receiver, in the course of liquidation proceedings. On appeal, the Comptroller asserts that his authority to conduct "post audits" (that is, audits of funds already disbursed) derives not from his "express constitutional power to pre-audit payments of 'money under [the State's] control,' " but from "his implied constitutional power to post-audit payments of such moneys and his express constitutional power to audit all official accounts."

Resisting the Comptroller's review of the Liquidation Bureau's operations, the Superintendent argues that funds held

by him as a fiduciary on behalf of the equitable owner are not "revenues and receipts" of the State nor "money under its control" so as to be subject to audit pursuant to NY Constitution, article V, § 1 and State Finance Law § 111. He contends that, as liquidator of a distressed insurer, he acts as a court-appointed receiver, much like any other receiver in a corporate dissolution proceeding (Business Corporation Law § 1202) and, as an agent of the court, he is subject only to the court's direction.

While we acknowledge the Superintendent's role as an officer of the court, the Comptroller's audit authority is derived from the Superintendent's parallel role as an officer of the State. The Superintendent is a state officer whether he acts in the capacity of a regulator or liquidator. Because, as the Comptroller notes, the State "acts through officers of the State duly appointed" (quoting Matter of Feltner v Teachers' Retirement Bd., 235 App Div 207, 209 [1932]), assets under the control of the Superintendent are subject to state control. Although the Superintendent holds the assets of the distressed insurer as a fiduciary in trust for the benefit of the creditors and policyholders, his authority derives from legislative enactment and the assets so held by him constitute money under the State's control, albeit not to be commingled with general governmental funds.

The second statutory source of the Comptroller's audit power is State Finance Law § 8 (2-b) (a), which prescribes the periodic audit of the internal controls and operations of state agencies and covered authorities. Under this statute, the Comptroller shall:

> "For the purposes of the New York state governmental accountability, audit and internal control act, assist in the development and implementation of an audit program for the state by:
>
> "a. Either as part of one or more audits, or separately, conducting periodic audits of internal controls and operations of state agencies (other than those state agencies for which an audit is required pursuant to sections nine hundred fifty-three and nine hundred fifty-four of the executive law) and of covered authorities. All such audits shall be performed in accordance with generally accepted government auditing standards. Nothing in the New York state governmental accountability, audit and

internal control act shall be deemed to diminish or impair the comptroller's power to audit and authority to supervise accounts under articles V and X of the state constitution and this chapter. The audits shall identify internal control weaknesses that have not been corrected and actions that are recommended to correct these weaknesses. If any such internal control weaknesses are significant or material with respect to the operations of the agency that is the subject of the audit, the comptroller shall so state."

State Finance Law § 8 (2-b) (a) confers power to audit the internal controls and operations of state agencies so as to provide accountability for the financial operations of a state subdivision, even one involving largely proprietary functions. The distinction drawn by the Superintendent between his alternative public administrative and private judicial functions would render the Liquidation Bureau immune from any financial surveillance other than that which might be provided by a court supervising the rehabilitation or liquidation of an insolvent insurer. The judiciary is hardly in a position to audit the general operations and internal controls of the Liquidation Bureau. Acceptance of the Superintendent's argument would permit the Bureau to avoid any oversight of the manner in which it handles the assets of an insolvent insurer, which is inconsistent with State Finance Law § 8 (2-b) (a) subjecting the operation and internal controls of state agencies to the Comptroller's audit.

We reject the Superintendent's argument that the Liquidation Bureau is not a "state agency" within the contemplation of the State Finance Law. We note that the Superintendent of Insurance is the exclusive liquidator and rehabilitator of insurance companies in distress, not the Bureau. While the Bureau's employees are paid out of private funds administered by the Superintendent, not from state revenues (*see e.g. Helvering v Therrell*, 303 US 218, 221, 225 [1938] [lawyer for Liquidation Bureau not a state employee]), the Bureau performs "a governmental or proprietary function for the state" (State Finance Law § 2-a [3]) and is therefore a state agency.[2]

As the Court of Appeals noted in *Matter of People (Casualty Co. of Am.)* (244 NY 443, 447 [1927]):

---

**2.** State Finance Law § 2-a (3) defines a "State agency" as "[a]ny state department, state university of New York, city university of New York, board,

"The liquidation of insurance companies in this State is governed by a statute adopted, in its main features, in 1909. The system of liquidation by receivers specially appointed had proved to be dilatory and wasteful. The Legislature substituted administration by a department of the government. Upon the application of the Superintendent of Insurance, an order may be made by the Supreme Court for the liquidation of the business. The work is to be done by the Superintendent and his deputies, but under the supervision of the court, and subject to its direction."

Thus, the Superintendent, assisted by the Insurance Department's Liquidation Bureau, performs a proprietary function under the mandate of state law.

As noted, NY Constitution, article V, § 1 provides that the "payment of any money of the state, or of any money under its control . . . except upon audit by the comptroller, shall be void." Insurance Law § 7405 (b) vests title to the property of an insolvent insurer in the Superintendent. The Superintendent's designation as the mandatory receiver of an insolvent insurer's assets is consistent with a legislative intent to place those assets under the control of a state officer, albeit one acting under judicial supervision, subject to the same financial and operational safeguards as any other funds subject to state control. Thus, while the Superintendent functions in a dual capacity, those functions are not mutually exclusive. By acting as an officer of the court, the Superintendent does not lose his status as an officer of the State. Moreover, assurance of the integrity of the Liquidation Bureau's operation and management afforded by the Comptroller's oversight is entirely consistent with the court's purpose in conserving and distributing the assets of an insolvent insurer.

State Finance Law § 121 (2) also supports the Comptroller's position. Its provisions are applicable to funds governed by State Finance Law § 4 (4), that is, to

"[m]oney which has not been given, granted, or bequeathed to the state, or any agency thereof conditionally or otherwise, and the ownership and equitable title of which belongs to an individual or

bureau, division, commission, committee, council, office or other governmental entity performing a governmental or proprietary function for the state."

organization other than the state, but which is being held by any agency or officer of the state pending transfer of such money to such individual or organization in accordance with the terms and conditions pursuant to which it was placed in the custody of such agency or officer."

This language fairly describes funds held by the Superintendent in his capacity as liquidator of a distressed insurer. Thus, the Superintendent is required to submit to an audit pursuant to State Finance Law § 121 (2).[3]

The Superintendent further disputes the Comptroller's authority to audit the financial management and operation of the Liquidation Bureau because its management of insolvent estates involves disbursements from the security funds. A fund "was initially enacted as a special benefit to protect New York insureds from the insolvency of companies underwriting automobile liability insurance," which "protection was then extended to other forms of casualty property insurance" (*Matter of Union Indem. Ins. Co. of N.Y.*, 92 NY2d 107, 113 [1998]). The Superintendent, similarly distinguishing his role as administrator of the security funds from his role as liquidator (*see id.* at 114), invokes article 74 of the Insurance Law to deny the Comptroller authority to audit the Liquidation Bureau's handling of insolvent estates. This argument is without merit. Since the Bureau's handling of insurer estates is inextricably intertwined with the Superintendent's guardianship of the security funds, to which the full faith and credit of the State is pledged (*see Alliance of Am. Insurers v Chu*, 77 NY2d 573, 577 [1991]), the administration of the assets of insolvent insurers by the Superintendent has immediate implications for the continuing solvency of the security funds.

---

**3.** State Finance Law § 121 (2) provides, in material part:
"In those cases where . . . moneys are held in the custody of the state officer other than the comptroller, the officer shall file with the comptroller, at such times as the comptroller shall determine, a detailed statement, in such form and content as the comptroller shall prescribe, for the period covered by the statement. The comptroller shall from time to time, but not less than once in every three years, examine the books and accounts relating to such moneys heretofore or hereinafter established, including its receipts, disbursements, investments, and any financial matters. An independent audit of such moneys may be authorized by the comptroller in lieu of his own examination, which examination shall be undertaken within twelve months of such authorization."

Similarly, the Comptroller is not limited to examining the Liquidation Bureau's handling of abandoned property. Assets held in trust by the Superintendent that are undistributed and unclaimed must be turned over to the Comptroller (*see* Abandoned Property Law §§ 705, 706, 1316). The Liquidation Bureau is obligated to file a report of abandoned property and to preserve, for a period of five years, "all books, records and documents necessary to establish the accuracy and completeness of such report" (Abandoned Property Law § 1412-a [1]). Furthermore, "[s]uch books, records and documents so retained shall be made available to the state comptroller upon his request in the performance of his duties under this chapter" (*id.*). Therefore, since it is clear that the Comptroller's audit power encompasses not only the security funds but also all closed estates, to preclude him from auditing the management and operation of unresolved rehabilitation and liquidation proceedings under Insurance Law article 74 would be both illogical and serve no purpose.

Finally, NY Constitution, article V, § 1 provides that the "legislature shall assign to [the Comptroller] no administrative duties, excepting such as may be incidental to the performance of these functions." While the proscription against the assumption of administrative duties may not be so narrowly construed as to encompass merely nonauditing duties (*see Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 89 NY2d 160, 170 [1996]),[4] neither article V, § 1 nor any of the relevant legislative enactments cited by the Superintendent bars the Comptroller from auditing the management and operation of the estates of insolvent, for-profit insurance companies.

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (Walter B. Tolub, J.), entered July 5, 2005, which granted petitioners' application to quash subpoenas served by respondent in July 2004 for the purpose of auditing all official accounts and moneys under petitioners' control by virtue of Insurance Law article 74 to the extent of quashing the subject subpoenas as overly broad, and declared that NY Constitution, article V, § 1, State Finance Law § 111 and Abandoned Property Law § 1412-a do not give the Comptroller authority to pre-audit or post-audit the Liquidation Bureau's financial management and operations or to audit property of distressed insurers held by the Superintendent, should be re-

---

4. Audits of not-for-profit health insurers "are administrative duties which may not be delegated to the Comptroller" (*id.* at 167).

versed, on the law, without costs, the subpoenas reinstated, and it is declared that respondent has the power to post-audit the Liquidation Bureau's financial management and operations and to audit property of distressed insurers held by the Superintendent of Insurance.

MALONE, J. (dissenting). I would affirm the quashing by Supreme Court of the Comptroller's subpoenas.

The courts have long held that the role of the Superintendent of Insurance as liquidator must be distinguished from his role as the state officer in charge of regulating the insurance industry (*see e.g. Corcoran v Hall & Co.*, 149 AD2d 165, 173 [1989]; *Corcoran v National Union Fire Ins. Co. of Pittsburgh*, 143 AD2d 309, 310-311 [1988]; *Matter of Ideal Mut. Ins. Co.*, 140 AD2d 62, 67-68 [1988]; *Matter of Kinney*, 257 App Div 496, 501 [1939], *affd* 281 NY 840 [1939]). Specifically, cases have held that "[w]hen acting as statutory liquidator of an insolvent insurer, the Superintendent is essentially a court-appointed *private* trustee who for all practical purposes takes the place of the insolvent insurer and stands in its shoes" (*Ideal Mut. Ins. Co.*, 140 AD2d at 67 [emphasis added]) and who "act[s] for a private business and not one utilized by the State in the discharge of its governmental duties" (*Corcoran*, 143 AD2d at 311, quoting *Matter of Kinney*, 257 App Div at 501), and holds the funds and legal title of property of an insolvent insurer in trust for the benefit of all its creditors (*Matter of Bean v Stoddard*, 207 App Div 276, 279 [1923], *affd on other grounds* 238 NY 618 [1924]). In finding that the Superintendent is a state officer whether he is acting as liquidator or regulator, the majority's decision effectively overrules this line of cases, thereby rendering the distinction made by the courts one without a difference. I cannot agree.

Further, I see no compelling reason to change how the Liquidation Bureau has conducted itself for the last 100 years, which accords with the fundamental principle that the Superintendent as liquidator is not a state officer. The Bureau pays federal income taxes and state franchise taxes for each insurer it administers (while a state entity would be exempt from such taxes); the Bureau continues to employ officers and employees of the insolvent insurer who remain non-state employees; the Bureau is represented in the liquidation proceedings by in-house counsel or private counsel, rather than the Attorney General, as a state agency would be; the Bureau is not included in the budget of the Insurance Department; the assets of the insolvent

entities are retained separate and apart from those of the State Treasury; the Bureau has no governmental immunity; any suits involving the Bureau are brought not in the Court of Claims, where damage suits against state agencies must be brought, but instead in Supreme Court; and the Bureau, unlike a governmental agency, must obtain its own errors and omissions insurance (*Matter of Consolidated Edison Co. of N.Y. v Insurance Dept. of State of N.Y.*, 140 Misc 2d 969, 973 [1988]). Further, in contrast to public officials, the Superintendent as liquidator has no governmental immunity and may be required by court to post a bond (Insurance Law § 7409 [b]), and claims or judgments entered against the Superintendent as liquidator are not claims or judgments against the State.

The constitutional and statutory provisions relied upon by the Comptroller do not extend his audit power to the Superintendent's handling of the dissolution or rehabilitation of distressed insurance companies or the internal financial controls and management procedures of the Liquidation Bureau. By its terms, NY Constitution, article V, § 1 limits the Comptroller's audit authority to "money of the state, or . . . under its control"; State Finance Law § 111, its statutory counterpart, limits the Comptroller's pre-audit power to "moneys in the possession, custody or control of any officer, agent, or agency of the state." As the above precedents make clear, both the Bureau and the Superintendent are outside the reach of these provisions. Simply put, the Bureau is not a state agency nor does it hold any state funds. Concomitantly, the Superintendent, in his role as liquidator, is neither a state officer nor under the Comptroller's control or purview. While *legal* title to the assets of the insolvent insurer passes to the Superintendent, *equitable* title remains in the defunct insurer to be held for ultimate distribution to creditors and policyholders (*see Corcoran*, 143 AD2d at 311). As the assets never vest absolutely in the State (manifested by the fact that they are separated from the state general fund), it is clear that the moneys collected in the liquidation process do not constitute state moneys to be used by the State for any purpose at any time. The majority's position that the assets remain subject to state control even though they are not to be commingled with general governmental funds is unsupported. Indeed, in different contexts dealing with NY Constitution, article V, § 1 and State Finance Law § 111, the courts have rejected similar arguments (*see Matter of Blaikie*, 11 AD2d 196 [1960] [State Harness Racing Commission]; *Matter of Smith*

*v Levitt*, 30 NY2d 934 [1972], *affg* 37 AD2d 418 [1971] [New York State Urban Development Corp.]; *see also Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund*, 22 NY2d 119, 123-124 [1968]; *Matter of Clark v Sheldon*, 106 NY 104, 111-112 [1887] [railroad]). Therefore, I find no compelling reason for different treatment to be accorded here to the Bureau and the Superintendent.

Even if, arguendo, the Superintendent were to be considered a state officer, "possession, custody or control" (State Finance Law § 111) "connotes the power to dispose of the funds in question" (*Blaikie*, 11 AD2d at 204). However, as the majority acknowledges, it is the Supreme Court, subject to this Court's appellate review, not the Superintendent, who controls the assets of insolvent insurance companies involved in rehabilitation or dissolution by " 'direct[ing] the manner in which payments and dividends to creditors shall be made' " (*Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245, 252 [1958], quoting Insurance Law § 545 [1]; *see* current Insurance Law § 7434 [a] [1]; § 7412 [b] [3]; *see also Consolidated Edison*, 140 Misc 2d at 977).

Neither is the Bureau a state agency under State Finance Law § 111 or § 8 (2-b) (a). As defined in State Finance Law § 2-a (3), a "State agency" is: "Any state department, state university of New York, city university of New York, board, bureau, division, commission, committee, council, office or *other governmental entity performing a governmental or proprietary function for the state* . . . ." (Emphasis added.) A governmental function is one "undertaken for the protection and safety of the *public* pursuant to the general police powers" (*Sebastian v State of New York*, 93 NY2d 790, 793 [1999] [emphasis added]). In contrast, the State acts in a proprietary function when it "essentially substitute[s] for or supplement[s] traditionally private enterprises" (*id.* [internal quotation marks omitted]). The difference is that the State remains generally immune from negligence claims when acting in its governmental capacity but not when acting in its proprietary capacity. However, because the Bureau operates without the benefit of state funds, it does not perform either a governmental or proprietary function *for the State*. The argument that the Superintendent performs a proprietary function for the State is further weakened by the fact that a money judgment entered against the Superintendent, as liquidator,

does not result in a money judgment against the State (*see Bean*, 207 App Div at 279).*

In my opinion, expansion of the Comptroller's authority to audit the Bureau is an issue that should be addressed by the Legislature. If the Bureau were, by virtue of the majority's decision, transformed into a state agency, the ramifications would have far-reaching implications that I do not believe were contemplated by the Legislature or are wise. The Bureau would be rendered subject, inter alia, to the requirement of legislative appropriations before any money could be spent (NY Const, art VII, § 7), the preapproval requirement for all contracts exceeding $50,000 entered into by a state agency or officer (State Finance Law § 112 [2] [a]), and the pre-auditing of any expenses before payment. In addition, the Superintendent's acts in liquidating insolvent insurance companies would be acts of the State, which would consequently expose the State to liability from which it is presently exempt. Finally, the majority's decision effectively undermines the undisputed authority of the Supreme Court to administer liquidation proceedings.

The Comptroller's subpoena seeking a *pre*-auditing of the Bureau is unprecedented. Before 1976, the Comptroller never performed a single audit of the Bureau; then beginning in 1976, and again in 1984, 1990, 1996, 1998 and 2001, the Comptroller conducted only limited *post*-audits of various parts of the Bureau, with its express consent, recognizing that the Bureau had historically been exempt from the oversight of the Comptroller and other state regulatory machinery. However, if, because of the Comptroller's added authority to *pre*-audit the Bureau, the Superintendent is hindered from, for example, canceling insurance policies, marshaling all assets and collateral, reviewing all contract and other obligations of the insolvent insurer, and locating, taking possession of and ultimately liquidating stocks, bonds, securities and other salable properties of the defunct insurer, the liquidation process would be seriously frustrated. Further, with the power of *pre*-auditing, nothing could conceivably prevent the Comptroller from participating in negotiating contracts entered into by the Superintendent on behalf of the insurers.

---

\* The majority's reliance upon State Finance Law § 121 (2), which authorizes the Comptroller's post-audit of funds held in trust by *state* officers, is also misplaced. This provision appears to refer to moneys that the State is entitled to retain and, unlike the situation herein, is not being held in trust for other entities or individuals such as creditors or policyholders.

Whether the Comptroller seeks a *pre-* or *post*-audit of the Bureau, either type of review would give him the ability to second-guess orders of the Supreme Court. In demanding "access to the records related to payments made directly from the insurer estates," the Comptroller seeks to circumvent Insurance Law article 74 since it is the court, upon the recommendation of the Superintendent as liquidator, that " 'direct[s] the manner in which payments and dividends to creditors shall be made' " (*Knickerbocker Agency*, 4 NY2d at 252, *supra*). A *post*-audit raises similar concerns. According to the Comptroller, a post-audit is necessary to ensure the financial integrity of the Superintendent's decisions regardless of whether they are subject to the court's review or approval. However, this view is at odds with "the paramount interest of the various States in seeing that insurance companies domiciled within their respective boundaries are liquidated in a uniform, orderly and equitable manner without interference from external tribunals" (*G. C. Murphy Co. v Reserve Ins. Co.*, 54 NY2d 69, 81 [1981]). As one federal court noted, "the structure of the New York system serves the state's strong interest in centralizing claims against an insolvent insurer into a single forum where they can be efficiently and consistently disposed of" (*Law Enforcement Ins. Co., Ltd. v Corcoran*, 807 F2d 38, 44 [2d Cir 1986], *cert denied* 481 US 1017 [1987]).

The Comptroller's performance of targeted reviews of the insurance security funds and abandoned property does not authorize the sweeping operational audits demanded in the subject subpoenas. First, the estates of liquidated insurers and the security funds are separate and distinct entities, each with its own separate purpose, payment eligibility criteria, and administration (*see Matter of Union Indem. Ins. Co. of N.Y.*, 92 NY2d 107 [1998]). The security funds, which serve to settle claims that remain unpaid when an authorized insurer becomes insolvent, are funded by insurers' periodic contributions, which are statutorily required to be kept "separate and apart . . . from all other state moneys" (Insurance Law § 7607 [a]). Disbursements from the funds are made by the New York State Commissioner of Taxation and Finance, who acts as the funds-' "custodian," to the Superintendent, acting as liquidator, upon the presentation of vouchers by the Superintendent (*id.*). That should be the extent of the Comptroller's review. So long as the Superintendent, acting as liquidator, rehabilitator or conservator, presents proper vouchers for the release of money in the se-

curity funds, pre-audits, which consist of mere reviews of the vouchers authorizing claim payments from the security funds, are administrative in nature.

While the scope of the Comptroller's inquiry as contained in the instant subpoenas is not unlimited, it is not up to the courts to " 'cull the good from the bad' " (*Grotallio v Soft Drink Leasing Corp.*, 97 AD2d 383 [1983], quoting *People v Doe*, 39 AD2d 869, 870 [1972]). For the foregoing reasons, the subject subpoenas are beyond the reach of the Comptroller and were properly quashed by Supreme Court as overbroad.

FRIEDMAN and SULLIVAN, JJ., concur with TOM, J.P.; CATTERSON and MALONE, JJ., dissent in a separate opinion by MALONE, J.

Judgment (denominated an order), Supreme Court, New York County, entered July 5, 2005, reversed, on the law, without costs, the subpoenas reinstated, and it is declared that respondent has the power to post-audit the Liquidation Bureau's financial management and operations and to audit property of distressed insurers held by the Superintendent of Insurance.